**REYNOLDS v. UNITED STATES.**

**BRAUNER et al. v. UNITED STATES.**

Nos. 10483, 10484.

United States Court of Appeals
Third Circuit.

Argued Oct. 19, 1951.

Decided Dec. 11, 1951.

Samuel D. Slade, Department of Justice, Washington, D. C. (Holmes Baldridge, Asst. Atty. Gen., Gerald A. Gleeson, U. S. Atty., Thomas J. Curtin, Asst. U. S. Atty., Philadelphia, Pa., Sidney J. Machtinger, Atty., Department of Justice, on the brief), for the United States.

Charles J. Biddle, Philadelphia, Pa. (Francis Hopkinson, Drinker Biddle & Reath, Philadelphia, Pa., on the brief), for appellees.

Before MARIS, GOODRICH and KAL-ODNER, Circuit Judges.

MARIS, Circuit Judge.

On October 6, 1948, a United States Air Force B-29 bomber, enroute from Robbins Air Force Base on a flight to Orlando, Florida, and return, crashed at Waycross, Georgia. The plane, carrying nine crew members and four civilian observers, had taken off for the purpose of an experimental testing of secret electronics equipment. Of the thirteen persons on board, nine were killed, including six members of the crew and three civilian observers who were engineer employees of private organizations involved in the research and development of the electronics equipment being tested. These consolidated suits under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671 et seq., were thereafter instituted in the United States District Court for the Eastern District of Pennsylvania by the widows of the three deceased civilian employees, each seeking damages for the alleged wrongful deaths of the deceased.

Subsequent to the filing of answers making general denials, detailed interrogatories pursuant to Civil Procedure Rule 33, 28 U. S.C., were served on the United States Attorney by the plaintiffs. One of the interrogatories requested that a copy of any investigation report of the accident be attached to the answer. Another similarly sought copies of statements of witnesses which might have been obtained in con-

nection with the accident. In answering the interrogatories the United States declined to comply with those questions which required the production of documents on the ground that such production was not within the scope of Rule 33.

Following the filing of these answers, plaintiffs made a motion under Civil Procedure Rule 34 for production of the official investigation report prepared by officers of the Air Force and the statements of the surviving crew members taken in connection with that investigation. To show good cause the motion and supporting affidavits stated that those documents constituted or contained information and evidence necessary in preparation for trial, that the documents were in the possession and control of the United States and that plaintiffs knew no way to obtain knowledge of their contents or the cause of the accident other than by their production.

On June 30, 1950 the district court sustained plaintiffs' motions to produce, holding that good cause had been shown therefor. 10 F.R.D. 468. After deciding the matter of good cause, the district judge disposed of the questions as to the privileged status of the departmental records involved by reference to the views which he had expressed in O'Neill v. United States, D.C., 1948, 79 F.Supp. 827. An order requiring production was entered on July 20, 1950.

The Attorney General, upon being notified of the result reached by the district judge, notified the Department of the Air Force. On July 24, 1950 a letter from the Secretary of the Air Force to the district court stated:

"Acting under the authority of Section 161 of the Revised Statutes (5 U.S.C. 22), it has been determined that it would not be in the public interest to furnish this report of investigation as requested by counsel in this case. This report was prepared under regulations which are designed to insure the collection of all pertinent information regarding aircraft accidents in order that all possible measures will be developed for the prevention of accidents and the optimum promotion of flying safety. Because this matter is one of such primary importance to the Air Force, it has been found neces-

sary to restrict the use of aircraft accident reports to the official purpose for which they are intended. Under our regulations, this type of report is not available in courts-martial proceedings or other forms of disciplinary action or in the determination of pecuniary liability.

"It is hoped that the extreme importance which the Department of the Air Force places upon the confidential nature of its official aircraft accident reports will be fully appreciated and understood by your Honorable Court."

Thereafter the district judge suggested that a hearing might be held so that this aspect of the case might be further considered. Accordingly a hearing was held by agreement in Washington, D. C., on August 9, 1950. At this hearing the district judge received a formal "claim of privilege" by the Secretary of the Air Force, setting forth the basis for the claim and the authority for the privilege, supported by his affidavit showing his right to promulgate regulations under Sec. 161, R.S., and the Act of March 1, 1875, 10 U.S.C.A. § 16, as head of the Department of the Air Force and describing the applicable regulations. In addition, an affidavit by the Judge Advocate General of the Air Force was filed which set forth the names and addresses of the survivors, undertook to make these witnesses available for interrogation at plaintiffs' will and at Government expense, and guaranteed to authorize the witnesses to testify to all matters pertaining to the cause of the accident except as to "classified" material. Further, the affidavit of the Judge Advocate General, after averring that all records, other than those classified or privileged, had already been made available to plaintiffs, specifically stated that the investigation board report and survivors' statements could not be furnished without seriously hampering national security, flying safety, and the development of highly technical and secret military equipment.

An amended order was issued by the district judge on September 21, 1950, to the effect that the United States should produce for examination by the court the documents in question, so that the court could determine whether the disclosure "would

violate the Government's privilege against disclosure of matters involving the national or public interest." Compliance with this order was not forthcoming and, on October 12, 1950, the district judge issued an order, under Civil Procedure Rule 37, that the facts in plaintiffs' favor on the issue of negligence be taken as established and prohibiting the defendant from introducing evidence to controvert those facts. Subsequently, a hearing was held on the question of damages and judgment was entered for the plaintiffs on February 27, 1951. These appeals by the United States followed.

The appeals now before us raise a number of important and difficult questions for our determination. The first is whether the district judge erred in his ruling that the plaintiffs had shown good cause under Rule 34 for the production of the statements of witnesses and investigation report which they sought to have produced for their inspection and copying. In concluding that good cause had been shown, the district judge said, 10 F.R.D. 468, 470–471:

"The plaintiffs have no knowledge of why the accident happened. So far as such knowledge is obtainable, the defendant has it. When the airplane crashed, it was wrecked and much of the evidence of what occurred was destroyed. Only persons with long experience in investigating airplane disasters could hope to get at the real cause of the accident under such circumstances. The Air Force appointed a board of investigators immediately after the accident and examined the surviving witnesses while their recollections were fresh. With their statements as a starting point the board was able to make an extensive investigation of the accident. These statements and the report of the board's investigation undoubtedly contain facts, information and clues which it might be extremely difficult, if not impossible, for the plaintiffs with their lack of technical resources to obtain merely by taking the depositions of the survivors.

"I am not suggesting that the witnesses on deposition would not answer the questions asked them truthfully but, in a case like this, in which seemingly trivial things may, to the expert, furnish important clues as to the cause of the accident, the plaintiffs must have accurate and precise firsthand information as to every relevant fact, if they are to conduct their examination of witnesses properly and to get at the truth in preparing for trial. This only the statements can give them. I would not go so far as to say that the witnesses would necessarily be hostile. However, they are employees of the defendant, in military service and subject to military authority and it is not an unfair assumption that they will not be encouraged to disclose, voluntarily, any information which might fix responsibility upon the Air Force.

"The answers to the interrogatories are far short of the full and complete disclosure of facts which the spirit of the rules requires. True, the defendant has produced a mass of documents but these refer to the past performance of the plane and service records of the pilots and are essentially negative. When it comes to the interrogatory 'Describe in detail the trouble experienced', the answer is, 'At between 18,500 or 19,000 feet manifold pressure dropped to 23 inches on No. one engine'. Obviously, the defendant, with the report and findings of its official investigation in its possession, knows more about the accident than this.

"Beside all this, the accident happened more than 18 months ago and what the crew would remember now might well differ in important matters from what they told their officers when the event was fresh in their minds. Even in simple accident cases requiring no technical knowledge to prepare for trial, the fact that a long period of time has elapsed between the accident and the taking of the deposition of a witness gives a certain unique value to a statement given by him immediately after the accident when the whole thing was fresh—particularly when given to an employer before any damage suit involving negligence has begun."

 We cannot say that in reaching his conclusion that good cause had been shown the district judge erred. The question, as we suggested in Alltmont v. United States, 3 Cir., 1950, 177 F.2d 971, 978, in every such case is whether special circumstances make it essential to the preparation of the party's case to see and copy the docu-

ments sought. In appraising for this purpose the circumstances of a particular case, the district court is necessarily vested with a wide discretion. Where, as here, the instrumentality involved in an accident was within the exclusive possession and control of the defendant so that it was as a practical matter virtually impossible for the plaintiffs to have made any independent investigation of the cause of the accident, considerations of justice may well demand that the plaintiffs should have had access to the facts, thus within the exclusive control of their opponent, upon which they were required to rely to establish their right of recovery. We agree with the district judge that it is not, under the circumstances of these cases, a sufficient answer to say that since the names of the witnesses whose statements were sought had been supplied in answer to the interrogatories, their depositions might have been taken by the plaintiffs. Obviously, this is no answer at all to their demand for the production of the investigation report. And under the circumstances here disclosed, as the district judge has cogently pointed out, it may well have been of vital importance to the plaintiffs to have knowledge of the contents of the statements made by the survivors immediately after the crash even though their depositions could also have been taken.

The Government's next contention is that even if it is held that good cause was shown by the plaintiffs for the production of the statements and report in question it was error to require their production because they were privileged. The Government points out that Rule 34 only authorizes the court to order the production of documents which are, in the language of the rule, "not privileged."

The Government's claim of privilege is based primarily on Section 161 of the Revised Statutes.[1] The primary contention is that this section in giving to the Secretary of the Air Force authority to prescribe regulations for the custody and use of the records and papers of his Department necessarily confers upon him full discretionary power in the public interest to refuse to produce any such records for examination and use in a judicial proceeding and that such records thereby become "privileged". The doctrine of separation of powers of the executive and judicial departments of the Government which is embodied in the Constitution is said to place the exercise of this discretionary power by the Secretary wholly beyond judicial review. In passing upon the validity, as applied to these cases, of this contention by the Government that it cannot be compelled to produce any records of the Department of the Air Force which the Secretary of that Department deems it not to be in the public interest to produce, it is necessary to consider the precise setting in which the contention is made.

In the first place it is clear that the validity of the regulations promulgated by the Secretary of the Air Force and his predecessor, the Secretary of War, with respect to the custody and production of papers and records of the Department is not in issue. For these regulations specifically provide that responsibility for the release of reports of boards of officers, special accident reports, or extracts therefrom regarding aircraft accidents to persons outside the authorized chain of command or administration, rests solely with the Secretary of the Air Force.[2] And since here the order to produce was directed to the United States as defendant, its execution, if lawfully demandable, obviously became the duty of the Secretary of the Air Force, the head of that department of the Government of the United States having custody of the records in question, who has full authority under the statute and the regulations to make such production. It is for this reason that the cases of Boske v. Comingore, 1900, 177 U.S. 459, 20 S.Ct. 701, 44 L.Ed. 846, and Touhy v. Ragen,

---

1. "Sec. 161. The head of each department is authorized to prescribe regulations, not inconsistent with law, for the government of his department, the conduct of its officers and clerks, the distribution and performance of its business, and the custody, use, and preservation of the records, papers, and property appertaining to it." 5 U.S.C.A. § 22.

2. AF Regulation, No. 62-7, December 17, 1947, paragraph 6.

1951, 340 U.S. 462, 71 S.Ct. 416, 95 L.Ed. 417, both of which involved the refusal of a subordinate employee of a governmental department to produce records without the approval of his department head, are not in point.

Also it will be observed that we are not called upon to decide whether the Government's contention is available as a defense against the enforcement of the desired discovery through a subpoena duces tecum directed to the Secretary or a contempt proceeding against him for failure to obey it. Such a case would indeed, as the Government argues, raise difficult constitutional questions arising out of the separation of powers under our Constitution.[3] Here no such action against any officer of the executive branch of the Government has been asked for or taken. We are concerned in these cases merely with ascertaining the legal duty of the Secretary under the Federal Tort Claims Act to make the requested discovery in order that we may determine whether his refusal to do so justified the order made by the district court under Civil Procedure Rule 37(b)(2) that the negligence of the United States be taken as established. And, finally, we do not have to determine the validity of the Government's contention as applied to a demand for the production of documents in a suit between private parties.[4] For here the United States is the party defendant against which these suits have been brought pursuant to the express authority of the Federal Tort Claims Act.

■ The Federal Tort Claims Act provides that "The United States shall be liable * * * in the same manner and to the same extent as a private individual under like circumstances." [5] Thus by the express terms of the Act Congress has divested the United States of its normal sovereign immunity to the extent of making it

liable in actions such as those now before us in the same manner as if it were a private individual. Moreover it has made the Federal Rules of Civil Procedure, including their discovery provisions, applicable to such actions against the United States.[6] We think that by so doing Congress has withdrawn the right of the executive departments of the Government in tort claims cases, even if under other circumstances such right exists,[7] to determine without judicial review the extent of the privilege against disclosure of Government documents sought to be produced for use in the litigation.

■ We come then to consider the propriety of the Government's claim of privilege in these cases. The principal basis of the Government's claim of immunity was set forth in the letter of the Secretary of the Air Force to the district judge dated July 24, 1950, from which we have already quoted. In that letter the Secretary stated that he had determined that it would not be in the public interest to furnish the documents requested. The basis which he stated for this determination was that it is necessary to restrict the use of aircraft accident reports so as to insure the collection of all pertinent information regarding aircraft accidents in order that all possible measures will be developed for the prevention of accidents and the optimum promotion of flying safety in the Air Force. The position of the Secretary in this regard is restated in the formal claim of privilege filed on August 9, 1950, as follows: "With regard to the demand for the production of the Report of Investigation (Report of Major Aircraft Accident, AF Form 14) and any other ancillary report or statement pertaining to this investigation, the respondent-defendant, the United States, has objected and still objects to the production of this report on the ground that it is privileged.

3. Compare Thompson v. German Valley R. Co., 1871, 22 N.J.Eq. 111; Appeal of Hartranft, 1877, 85 Pa. 433.

4. Compare Marbury v. Madison, 1803, 1 Cranch. 137, 5 U.S. 137, 144, 2 L.Ed. 60; Gray v. Pentland, 1815, 2 Serg & R., Pa., 23.

5. 28 U.S.C. § 2674.

6. United States v. Yellow Cab Co., 1951, 340 U.S. 543, 553, 71 S.Ct. 399, 95 L. Ed. 523; United States v. General Motors Corporation, D.C.N.D.Ill.1942, 2 F. R.D. 528, 530.

7. But see 8 Wigmore on Evidence, 3d Ed. § 2379; Berger and Krash, Government Immunity from Discovery, 1950, 59 Yale L.J. 1451.

The report of investigation (Report of Major Aircraft Accident, AF Form 14), together with all the statements of the witnesses, was prepared under regulations which are designed to insure the disclosure of all pertinent factors which may have caused, or which may have had a bearing on, the accident in order that every possible safeguard may be developed so that precautions may be taken for the prevention of future accidents and for the purpose of promoting the highest degree of flying safety. These statements are obtained in confidence, and these reports are prepared for intra-departmental use only, with the view of correcting deficiencies found to have existed and with the view of taking necessary corrective measures or additional precautions based on the opinions and conclusions of the Board of Officers convened to investigate such accidents. The disclosure of statements made by witnesses and air-crewmen before Accident Investigation Boards would have a deterrent effect upon the much desired objective of encouraging uninhibited statements in future inquiry proceedings instituted primarily in the interest of flying safety."

It will be seen that the privilege thus claimed is a broad one against any disclosure of the results of what the Government has aptly called its "housekeeping" investigations.[8] In support of its claim of privilege the Government points to paragraph 2 of Air Force Regulation No. 62–7 which contains the following provision: "Aircraft accident information is procured from reports of personnel who have waived their rights under the 24th Article of War in the interest of accident prevention upon the assurance that the reports will not be used in any manner in connection with any investigation or proceeding toward disciplinary action, determination of pecuniary

liability, or line-of-duty status or reclassification." It seems clear to us, however, that this regulation has no bearing on the problem before us since it merely imposes restrictions upon the subsequent use within the department for disciplinary and other purposes of statements of Air Force personnel with respect to aircraft accidents.

It may be conceded that in addition to the privilege against divulging state secrets, to which we shall later advert, there is also a less clearly defined privilege against disclosing official information if such disclosure will actually be harmful to the interests of the nation.[9] But we do not think that in the present cases brought under the Federal Tort Claims Act the Department of the Air Force is entitled to the absolute "housekeeping" privilege which it asserts against disclosing any statements or reports relating to this airplane accident regardless of their contents.[10] It may well be more convenient and efficient in the conduct of accident investigations for the Department not to be required to disclose statements and reports of this character. But the same would be true in the case of any private person and the latter do not ordinarily enjoy that privilege. Where, as here, the United States has consented to be sued as a private person, whatever public interest there may be in avoiding any disclosure of accident reports in order to promote accident prevention must yield to what Congress evidently regarded as the greater public interest involved in seeing that justice is done to persons injured by governmental operations whom it has authorized to enforce their claims by suit against the United States.[11] When Congress has desired to bar the admission of airplane accident reports in evidence it has known how to do so [12] and it has also known

8. Bank Line v. United States, D.C.S.D.N. Y.1948, 76 F.Supp. 801, 803.

9. As we shall point out later in this opinion this privilege was fully protected by the district judge in his amended order in these cases.

10. See 8 Wigmore on Evidence, 3d Ed., § 2378a; Berger and Krash, Government Immunity from Discovery, 1950, 59 Yale L.J. 1451.

11. Bank Line v. United States, D.C.S.D. N.Y.1948, 76 F.Supp. 801; Cresmer v. United States, D.C.E.D.N.Y.1949, 9 F.R. D. 203.

12. Title VII of the Civil Aeronautics Act of 1938 contained the following provisions:
 "Air Safety Board
 * * * * *

how to give to department heads discretionary power to refuse to produce records in suits brought against the United States.[13] It has done neither in connection with suits under the Federal Tort Claims Act.

Moreover we regard the recognition of such a sweeping privilege against any disclosure of the internal operations of the executive departments of the Government as contrary to a sound public policy. The present cases themselves indicate the breadth of the claim of immunity from disclosure which one government department head has already made. It is but a small step to assert a privilege against any disclosure of records merely because they might prove embarrassing to government officers. Indeed it requires no great flight of imagination to realize that if the Government's contentions in these cases were affirmed the privilege against disclosure might gradually be enlarged by executive determinations until, as is the case in some nations today, it embraced the whole range of governmental activities.

We need to recall in this connection the words of Edward Livingston: "No nation ever yet found any inconvenience from too close an inspection into the conduct of its officers, but many have been brought to ruin, and reduced to slavery, by suffering gradual imposition and abuses, which were imperceptible, only because the means of publicity had not been secured." [14] And it was Patrick Henry who said that "to cover with the veil of secrecy the common routine of business, is an abomination in the eyes of every intelligent man and every friend to his country.[15]

It has been held that in criminal cases the Government has the choice either to reveal all evidence within its control which bears upon the charges or let the offense go unpunished, at least where the evidence is held by officials who are themselves charged with the administration of those laws for the violation of which the accused has been indicted.[16] We think that the Federal Tort Claims Act offers the Government an analogous choice in tort claims cases. The Government may decide to recognize the public interest involved in according justice to the private claimant who has brought suit against it by producing relevant documents in its possession upon an order of the court under Rule 34. On the other hand the Government may decide to give priority to the public interest which it believes to be involved in preserving the documents from disclosure by declining to produce them upon the order of the court at the cost, if its claim of privilege is overruled, of having the facts to which the documents are directed taken by the court to be established against the United States under Civil Procedure Rule 37(b)

"Sec. 701. * * *

"Preservation of Records and Reports

"(e) The records and reports of the Board shall be preserved in the custody of the secretary of the Authority in the same manner and subject to the same provisions respecting publication as the records and reports of the Authority, except that any publication thereof shall be styled 'Air Safety Board of the Civil Aeronautics Authority', and that no part of any report or reports of the Board or the Authority relating to any accident, or the investigation thereof, shall be admitted as evidence or used in any suit or action for damages growing out of any matter mentioned in such report or reports." 52 Stat. 1013, 49 U.S.C.A. § 581.

13. For example, § 2507 of Title 28, United States Code, provides:
"§ 2507. Calls on departments for information.

"The Court of Claims may call upon any department or agency of the United States for any information or papers it deems necessary, and may use all recorded and printed reports made by the committees of the Senate or House of Representatives.

"The head of any department or agency may refuse to comply when, in his opinion, compliance will be injurious to the public interest."

14. Edward Livingston, Works, I, p. 15.

15. Elliot's Debates, vol. 3, p. 170.

16. United States v. Andolschek, 2 Cir., 1944, 142 F.2d 503; United States v. Krulewitch, 2 Cir., 1944, 145 F.2d 76, 156 A.L.R. 337; United States v. Beekman, 2 Cir., 1946, 155 F.2d 580, 584; United States v. Grayson, 2 Cir., 1948, 166 F.2d 863.

(2)(i). This last is the alternative which the Government chose in the cases now before us. The Federal Rules of Civil Procedure offer such a choice to private litigants under similar circumstances and we are satisfied that under the Federal Tort Claims Act the same choice is presented to the Government which, as we have seen, has been placed by Congress in this respect in the position of a private individual defending against a tort action.

At this point we must pause to notice a procedural contention of the Attorney General. It is that since the question which we have been discussing involves the duty of the Secretary of the Air Force to produce the documents in question it may only be decided in a proceeding in which that official is brought into court by direct process to answer the plaintiffs' demands for production of the documents. We find no merit in this contention, however, since the order to produce the documents which was made by the district court in these cases was not directed to the Attorney General or any other officer of the Government. On the contrary, it was directed to "defendant, the United States of America, its agents and attorneys." Since obviously the United States can respond only by its agents and since the Secretary of the Air Force is the agent of the United States concerned with the documents here ordered to be produced it seems quite clear that the order is directed to and binding upon him just as much as upon the Attorney General who in these cases is merely attorney for the United States. Moreover we think that the Secretary of the Air Force recognized this fact when he presented his claim of privilege to the district court for its consideration and approval stating that the defendant, the United States, objected to production on the ground that the documents were privileged. Under these circumstances it was clearly within the judicial power of the court to pass upon the question of privilege thus raised.

The formal claim of privilege filed with the district court by the Secretary of the Air Force on August 9, 1950, laid a second basis for the claim in the following language: "The defendant further objects to the production of this report, together with the statements of witnesses, for the reason that the aircraft in question, together with the personnel on board, were engaged in a confidential mission of the Air Force. The airplane likewise carried confidential equipment on board and any disclosure of its mission or information concerning its operation or performance would be prejudicial to this Department and would not be in the public interest."

The claim of privilege thus made is of a wholly different character from the one previously discussed. It asserts in effect that the documents sought to be produced contain state secrets of a military character. State secrets of a diplomatic or military nature have always been privileged from disclosure in any proceeding [17] and unquestionably come within the class of privileged matters referred to in Rule 34. Moreover this privilege, as well as the privilege previously mentioned against disclosure of official information which would be harmful to the interests of the United States, was fully recognized by the district judge in these cases in his final order. For as we have seen, he directed that the documents in question be produced for his personal examination so that he might determine whether all or any part of the documents contain, to use the words of his order, "matters of a confidential nature, discovery of which would violate the Government's privilege against disclosure of matters involving the national or public interest." The Government was thus adequately protected by the district court from the disclosure of any privileged matter contained in the documents in question.

The Government contends, as we have stated, that it is within the sole prov-

---

17. Totten v. United States, 1875, 92 U.S. 105, 107, 23 L.Ed. 605; Firth Sterling Steel Co. v. Bethlehem Steel Co., D.C. E.D.Pa.1912, 199 F. 353; Pollen v. Ford Instrument Co., D.C.E.D.N.Y.1939, 26 F.Supp. 583; 8 Wigmore on Evidence, 3d Ed., §§ 2212a, 2378; 1 Greenleaf on Evidence, Lewis' Ed., § 250.

ince of the Secretary of the Air Force to determine whether any privileged material is contained in the documents and that his determination of this question must be accepted by the district court without any independent consideration of ·the matter by it. We cannot accede to this proposition. On the contrary we are satisfied that a claim of privilege against disclosing evidence relevant to the issues in a pending law suit involves a justiciable question, traditionally within the competence of the courts,[18] which is to be determined in accordance with the appropriate rules of evidence,[19] upon the submission of the documents in question to the judge for his examination *in camera*.[20] Such examination must obviously be *ex parte* and *in camera* if the privilege is not to be lost in its assertion. But to hold that the head of an executive department of the Government in a suit to which the United States is a party may conclusively determine the Government's claim of privilege is to abdicate the judicial function and permit the executive branch of the Government to infringe the independent province of the judiciary as laid down by the Constitution.[21]

The Government presses upon us the contrary conclusion of the British House of Lords in Duncan v. Cammell, Laird & Co., (1942) A.C. 624. The case is dis-tinguishable in that the plans of the submarine Thetis there involved were obviously military secrets and the suit was between private parties. But we do not regard the case as controlling in any event. For whatever may be true in Great Britian[22] the Government of the United States is one of checks and balances. One of the principal checks is furnished by the independent judiciary which the Constitution established. Neither the executive nor the legislative branch of the Government may constitutionally encroach upon the field which the Constitution has reserved for the judiciary by transferring to itself the power to decide justiciable questions which arise in cases or controversies submitted to the judicial branch for decision.[23] Nor is there any danger to the public interest in submitting the question of privilege to the decision of the courts. The judges of the United States are public officers whose responsibility under the Constitution is just as great as that of the heads of the executive departments. When Government documents are submitted to them *in camera* under a claim of privilege the judges may be depended upon to protect with the greatest of care the public interest in preventing the disclosure of matters which may fairly be characterized as privileged.[24] And if, as

18. Cresmer v. United States, D.C.E.D.N.Y.1949, 9 F.R.D. 203; Evans v. United States, D.C.W.D.La.1950, 10 F.R.D. 255.

19. Aaron Burr's Trial, Robertson's Rep. (1808), vol. 1, pp. 180–181; United States v. Ebeling, 2 Cir., 1944, 146 F.2d 254, 256–257; Wild v. Payson, D.C. S.D.N.Y.1946, 7 F.R.D. 495, 499; 2 Moore's Federal Practice (1938) 2641.

20. "It would rather seem that the simple and natural process of determination was precisely such a private perusal by the judge. Is it to be said that even this much of disclosure cannot be trusted? Shall every subordinate in the department have access to the secret, and not the presiding officer of justice? Cannot the constitutionally coordinate body of government share the confidence?" 8 Wigmore on Evidence, 3d Ed., p. 799.
See also 4 Moore's Federal Practice,

21. United States v. Cotton Valley Operators Committee, D.C.W.D.La.1949, 9 F.R.D. 719, 720, affirmed by equally divided court, 339 U.S. 940, 70 S.Ct. 793, 94 L.Ed. 1356; 8 Wigmore on Evidence, 3d Ed., § 2379.

22. Compare Duncan v. Cammell, Laird & Co., (1942) A.C. 624, with Robinson v. State of South Australia (No. 2), (1931) A.C. 704.
See Note, Administrative Discretion and Civil Liberties in England, 1943, 56 Harv.L.R. 806.

23. Kilbourn v. Thompson, 1880, 103 U.S. 168, 182, 190, 26 L.Ed. 377; Chicago & Southern Air Lines v. Waterman Corp., 1948, 333 U.S. 103, 113, 68 S.Ct. 431, 92 L.Ed. 568.

24. See Berger and Krash, Government Immunity from Discovery, 1950, 59 Yale L.J. 1451, 1462–1464.

the Government asserts is sometimes the case, a knowledge of background facts is necessary to enable one properly to pass on the claim of privilege those facts also may be presented to the judge *in camera*.

One final point remains to be considered. The Government points to Civil Procedure Rule 55(e) which provides that "No judgment by default shall be entered against the United States * * * unless the claimant establishes his claim or right to relief by evidence satisfactory to the court." Its contention is that the order of the district court entered in these cases that the facts in plaintiffs' favor on the issue of negligence be taken as established because of the Government's refusal to produce the documents in question amounted to the entry of judgment against the United States by default in violation of the rule. We do not agree. Paragraph (a) of Rule 55 in effect defines judgment by default as the judgment which the clerk enters when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by the rules. In the case before us the United States has filed answers and has vigorously defended the actions. The distinction is outlined in Rule 37(b)(2). That rule sets forth the relief which the court may grant upon the refusal of a party to produce evidence after having been directed to do so, as follows:

"(i) An order that the matters regarding which the questions were asked, or the character or description of the thing or land, or the contents of the paper, or the physical or mental condition of the party, or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

"(ii) An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing in evidence designated documents or things or items of testimony, or from introducing evidence of physical or mental condition;

"(iii) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party".

It will be observed that the order made by the court in these cases is of the type authorized by subparagraphs (i) and (ii), whereas a judgment by default against a disobedient party is specifically authorized by subparagraph (iii). We think it is clear from the language of the rules that the order made by the district court in these cases did not amount to a judgment by default within the meaning of Rule 55(e).

We conclude (1) that the district court did not err in holding that good cause had been shown by the plaintiffs for production of the statements and the report in question which they asked the United States to produce, (2) that the district court rightly rejected the broad claim of privilege made by the United States not to produce any statements or reports regarding airplane accidents, (3) that the order of the district court entered on rehearing on plaintiffs' motions for the production of the documents rightly provided for the determination by the court of the Government's claim of privilege as to any particular parts of the documents and (4) that upon the election of the United States nonetheless not to produce the documents, the order of the court directing that certain facts be taken as established against the United States in these cases was authorized by Rule 37(b)(2)(i) and (ii) and was accordingly not erroneous.

Since we find no error the judgments entered in favor of the plaintiffs after trial of the issue of damages will be affirmed.