Stella **PETROWICZ**, a/k/a Stella
Petroski,

v.

John W. **HOLLAND**, District Director,
Immigration and Naturaliza-
tion Service.

Civ. A. No. 20416.

United States District Court
E. D. Pennsylvania.

June 22, 1956.

Order July 23, 1956.

A. Harry Levitan, Philadelphia, Pa.,
for plaintiff.

W. Wilson White, U. S. Atty., and
Norman C. Henss, Asst. U. S. Atty., for
defendant.

VAN DUSEN, District Judge.

The defendant has filed a mo-
tion for summary judgment and no an-

swer to the complaint[1] in this action for declaratory judgment and injunctive relief by an alien seeking to restrain the enforcement of an order directing that she be deported to Poland. The complaint and the certified copy of the deportation proceedings filed with the motion for summary judgment show, inter alia, the following:

1. The alien plaintiff was born in Poland in 1900 and has been a resident of this country since June 1914. She is the mother of eight children who are citizens of the United States of America and she has seventeen grandchildren in this country.

2. In October 1935, the Board of Review of the Immigration and Naturalization Service reversed an order directing plaintiff to be deported, issued about June 1, 1935, after testimony had been taken before a hearing examiner in May 1935, and held "inter alia, that there was no evidence to affirmatively show her a member of the Communist Party or that she was a member of the Communist Party subsequent to entry."

3. On August 25, 1953, there was served on plaintiff a warrant of arrest, charging her with being in this country in violation of Section 241(a) of the Immigration and Nationality Act, 8 U.S.C.A. § 1251(a), because she was, after entry into this country, an alien who was a member of the Communist Party of the United States. Plaintiff was granted a hearing under this warrant on February 9, 10, 11 and March 8, 1954, at which time testimony, transcribed on 265 letter-size pages, was offered by the Immigration and Naturalization Service before Loyd H. Matson, Special Inquiry Officer. Plaintiff was present at the hearing with counsel, but did not testify nor did she offer any evidence to rebut the evidence produced by the Service.

4. On August 20, 1954, the Special Inquiry Officer filed a thorough discussion of the testimony, findings of fact, including a finding that plaintiff was a member of the Communist Party of the United States in 1935 and 1936, conclusions of law, including a conclusion that plaintiff was subject to deportation under the above-mentioned Section 241(a), and an order that plaintiff be deported from the United States of America.

5. On December 21, 1954, the Board of Immigration Appeals, in a well-considered opinion, dismissed an appeal taken by plaintiff from the deportation order of August 20, 1954.

6. By letter dated March 16, 1956, plaintiff was ordered to report for deportation to Poland on April 2, 1956.[2]

Plaintiff contends that she was denied procedural due process of law[3] by the refusal of the Examining Officer to submit to the Special Inquiry Officer for examination (and to counsel for plaintiff if there was a basis therefor) written statements given by the witnesses to government agents many months prior to the time of the hearings.[4] The

---

1. Although the plaintiff's administrative remedies were exhausted by the order of December 21, 1954 (see paragraph No. 5 of opinion), the complaint was not filed until March 20, 1956. Since the notice to report for deportation was dated March 16, 1956, and defendant has made no showing of prejudice resulting from plaintiff's delay in filing this complaint, this action must be considered timely in view of the failure of the Administrative Procedure Act, 5 U.S.C.A. § 1009, to provide any time limit within which judicial review must be sought.

2. A preliminary injunction was issued, restraining the deportation of plaintiff pursuant to this order of 4/2/56, and a hearing was held on this preliminary injunction and on the motion for summary judgment on April 6, 1956.

3. Admittedly, this alien is entitled to the procedural due process of law required by the Fifth Amendment. See Kwong Hai Chew v. Colding, 1953, 344 U.S. 590, 73 S.Ct. 472, 97 L.Ed. 576.

4. The statement of Mrs. Dorothy Horst was given at least eight months prior to her testimony (May or June 1953, N.T. 23, 31 & 34), the statement of James Henry Evans over a year prior to his testimony (N.T. 151–2), and the statement of Leonard Patterson at least six months prior to his testimony (May or summer

defendant claims that these statements are confidential. Congress has provided for the administrative proceedings taken in this case [5] and for "full judicial review of this deportation order" by this court.[6]

Irrespective of the public interest that may be served by not requiring the Government to produce such documents, the Third Circuit Court of Appeals has indicated that the desire of Congress to see justice done to persons entitled to judicial review is of prime consideration, and the reviewing court must determine whether these statements disclose inconsistencies with present testimony of such a nature that plaintiff's counsel needs them in order to elicit the truth through cross-examination. This rule is subject to the provision that the inconsistencies not appear in matter required to be kept secret for security or other legal reasons.[7] See Reynolds v. United States, 1951, 192 F.2d 987, 994.[8] The reversal of that decision by the United States Supreme Court was specifically based on grounds which are not applicable here[9] and the Supreme Court opinion recognizes the applicability of the lower court reasoning discussed above to criminal cases. See 1953, 345 U.S. 1, 12, 73 S.Ct. 528, 97 L.Ed. 727.

The Circuit Court of Appeals stated in the Reynolds case, 192 F.2d at page 995:

"It has been held that in criminal cases the Government has the choice either to reveal all evidence within its control which bears upon the

Government in a suit to which the United States is a party may conclusively determine the Government's claim of privilege is to abdicate the judicial function and permit the executive branch of the Government to infringe the independent province of the judiciary as laid down by the Constitution.

\* \* \* \* \*

"When Government documents are submitted to them *in camera* under a claim of privilege the judges may be depended upon to protect with the greatest of care the public interest in preventing the disclosure of matters which may fairly be characterized as privileged. And if, as the Government asserts is sometimes the case, a knowledge of background facts is necessary to enable one properly to pass on the claim of privilege those facts also may be presented to the judge *in camera*."

The recent decisions of that court are fully consistent with the importance of cross-examination as an element of due process of law. See United States v. Fontana, 3 Cir., 1956, 231 F.2d 807; United States v. Hogan, 3 Cir., 232 F.2d 905.

---

of 1953, N.T. 151–2). The testimony of Stanley Carl Orzek is not sufficiently significant to make important the production of his statement, given two months prior to his testimony (N.T. 95–6, 100–3). The fifth witness, Thomas Zygmont, gave no statement. Mrs. Horst's statement was given under oath.

5. 8 U.S.C.A. § 1252(b); 8 U.S.C.A. § 1101 (b) (4) provides for selection and supervision of Special Inquiry Officers by the Attorney General.

6. 5 U.S.C.A. § 1009. See Shaughnessy v. Pedreiro, 1955, 349 U.S. 48, 52, 75 S. Ct. 591, 99 L.Ed. 868.

7. Cf. United States v. Li Fat Tong, 2 Cir., 1945, 152 F.2d 650.

8. The full discussion of the problem in this case at pages 992–998 makes it unnecessary to discuss here the points so ably covered in that opinion. The court used the following language at pages 997–998:

"\* \* \* we are satisfied that a claim of privilege against disclosing evidence relevant to the issues in a pending law suit involves a justiciable question, traditionally within the competence of the courts, which is to be determined in accordance with the appropriate rules of evidence, upon the submission of the documents in question to the judge for his examination *in camera*. Such examination must obviously be *ex parte* and *in camera* if the privilege is not to be lost in its assertion. But to hold that the head of an executive department of the

9. The Reynolds case involved an action for damages under the Federal Tort Claims Act, 28 U.S.C.A. §§ 1346, 2674. The Supreme Court said that the rationale of the rule above discussed is applicable to criminal cases, but not to a civil case under the Tort Claims Act, where the Government consents to be sued on its own terms. See language quoted below in footnote 10.

charges or let the offense go unpunished, at least where the evidence is held by officials who are themselves charged with the administration of those laws for the violation of which the accused has been indicted." [10]

Defendant contends this principle is inapplicable here because counsel for plaintiff did not establish that the statements contained material inconsistent with the the testimony given by the witnesses before the Special Inquiry Officer. Several Federal cases have placed this burden on individuals seeking to use for impeachment statements in the possession of the Federal Government;[11] however, there are also cases indicating that where the individual has no way of determining the contents of such statements, the proper procedure is to have the trial judge examine the statements *in camera* and decide, first, if they contain any material of impeachment value and, second, if such material is so confidential that it should not be disclosed for such impeachment purposes. See United States v. Lebron, 2 Cir., 1955,

222 F.2d 531, 536–537 and United States v. Mesarosh, D.C.W.D.Pa.1953, 116 F. Supp. 345,[12] and cases there cited; cf. Fryer v. United States, 1953, 93 U.S.App. D.C. 34, 207 F.2d 134.[13]

■ The United States Supreme Court has consistently recognized that deportation "may result also in loss of both property and life, or of all that makes life worth living", Ng Fung Ho v. White, 1922, 259 U.S. 276, 284, 42 S. Ct. 492, 495, 66 L.Ed. 938 and "is * * * at times the equivalent of banishment or exile," Fong Haw Tan v. Phelan, 1948, 333 U.S. 6, 10, 68 S.Ct. 374, 376, 92 L. Ed. 433. See Galvan v. Press, 1954, 347 U.S. 522, 530, 74 S.Ct. 737, 98 L.Ed. 911. In view of these serious consequences, exacting procedural requirements are applicable to deportation proceedings. See Bridges v. Wixon, 1945, 326 U.S. 135, 154, 65 S.Ct. 1443, 89 L.Ed. 2103.[14] At least one Federal court has stated that the public policy considerations requiring the production of documents in the Government's possession for inspection by the trial judge *in camera* to determine their relevance are applicable in a de-

10. The Supreme Court said at page 12 of 345 U.S., at page 534 of 73 S.Ct. of its opinion in the Reynolds case:
"Respondents have cited us to those cases in the criminal field, where it has been held that the Government can invoke its evidentiary privileges only at the price of letting the defendant go free. The rationale of the criminal cases is that, since the Government which prosecutes an accused also has the duty to see that justice is done, it is unconscionable to allow it to undertake prosecution and then invoke its governmental privileges to deprive the accused of anything which might be material to his defense. Such rationale has no application in a civil forum where the Government is not the moving party, but is a defendant only on terms to which it has consented."

11. See Jencks v. United States, 5 Cir., 1955, 226 F.2d 540, 552, and Scanlon v. United States, 1 Cir., 1955, 223 F.2d 382, 385–386, and cases there cited. It is noted that the United States Supreme Court has granted certiorari in the Jencks case, 350 U.S. 980, 76 S.Ct. 467.

12. In the Mesarosh case, the court said at page 350:

"We are of the further opinion that the Government's contention that defendants are not entitled to the reports because they have not shown that the reports contradict Cvetic is untenable. Defendants cannot show that the reports contradict the witness unless they see them."

13. See also United States v. Cohen, 2 Cir., 1944, 145 F.2d 82, 92; United States v. Ebeling, 2 Cir., 1944, 146 F.2d 254, 256–257; Cf. Shelton v. United States, 5 Cir., 1953, 205 F.2d 806, 814, certiorari denied 346 U.S. 892, 74 S.Ct. 230, 98 L.Ed. 395.

14. In the Bridges case, the court said, 326 U.S. at page 154, 65 S.Ct. at page 1452: "Though deportation is not technically a criminal proceeding, it visits a great hardship on the individual and deprives him of the right to stay and live and work in this land of freedom. That deportation is a penalty—at times a most serious one—cannot be doubted. Meticulous care must be exercised lest the procedure by which he is deprived of that liberty not meet the essential standards of fairness."

portation proceeding involving an enemy alien. See United States ex rel. Schlueter v. Watkins, D.C.S.D.N.Y.1946, 67 F.Supp. 556, 561.[15]

Since the proposed deportation order contemplates sending this alien plaintiff behind the "iron curtain" on the basis of a fact alleged to have occurred approximately twenty years ago, this long-time resident of the United States, having a large family here, would seem entitled to have in her trial at least those safeguards given to an accused in a felony case, if not those granted to an accused in a capital case.

■ In view of these authorities and the serious nature of this deportation proceeding, I hold only that the statements of the witnesses, Dorothy Horst,[16] James Henry Evans, Leonard Patterson and Stanley Carl Crzek, should be presented to either me or the Special Inquiry Officer *in camera* if the Government wishes the Special Inquiry Officer to consider the testimony of these witnesses.[17] I shall also be glad to consider *in camera* any background facts the Government may feel are necessary to enable me to pass on the claim of privilege based on the confidential character

of the statements (see last paragraph of quotation in footnote 8).

I have read the record carefully and the finding of the Special Inquiry Officer that plaintiff was a member of the Communist Party in 1935 and 1936 is fully supported by substantial evidence, as required by 5 U.S.C.A. § 1009, assuming that the evidence is competent because the above-mentioned statements have no impeachment value. See Quilodran-Braw v. Holland, D.C.E.D.Pa.1955, 132 F.Supp. 765, affirmed 3 Cir., 1956, 232 F.2d 183. The following language of the court in United States v. Coplon, 2 Cir., 1950, 185 F.2d 629, 638, is very appropriate in this case:

"* * * in truth it is extremely unlikely that she suffered the slightest handicap from the judge's refusal. But we cannot dispense with constitutional privileges because in a specific instance they may not in fact serve to protect any valid interest of their possessor."

On April 20, 1956,[18] I suggested to both counsel that the above-mentioned statements be submitted to me *in camera* for the reasons stated herein.[19] The

---

15. In that case, the court said:
"Assuming the requested material to be importantly relevant, the government, in a criminal proceeding, would be deemed to have abandoned its privilege * * * the theory of waiver upon which the requirement of disclosure has been based seems to me to be the kind of useful fiction which the law invents to express an underlying public policy. That public policy is that a person should not be deprived of his liberty without giving him an opportunity to have access to material which might exculpate him. The considerations underlying such public policy are present in this case in abundance since it involves deportation."

16. Although the Government offered to produce the statement of Dorothy Horst (the first witness) under what were reasonable limitations (N.T. 25), counsel for plaintiff rejected this offer and, in a series of statements which are most confusing (N.T. 26–8), he very nearly accepted the offer which he had rejected previously. No such limited offer was

made by the Government in the case of the other witnesses (Evans and Patterson). Since the statements of these other witnesses must be produced, it is in the interests of justice that the Horst statement should also be produced.

17. This does not necessarily mean that I would require such statements to be produced in every criminal case or every deportation case. See, for example, the considerations mentioned in United States v. Alper, 2 Cir., 1946, 156 F.2d 222, 226. There is a substantial difference between the penalties prescribed for crimes of filing false statements with a government agency and of wilful evasion of income tax, which were involved in the cases in footnote 11, and the penalty of deportation of this plaintiff to Poland, which is more comparable to the first degree murder charge in the Fryer case, supra.

18. The hearing was held on April 6, 1956.

19. It was pointed out on April 20 that since the impeachment character of the

Assistant United States Attorney, representing the defendant, requested time to consult the appropriate Government officials and on May 23, 1956, a letter was received from the United States Attorney, renewing the Government's objection to the production of the documents *in camera* but not refusing to do so. This opinion has been written to formalize the reasons stated at the April 20th conference and to cite the authorities in support of the order described in the next paragraph.

Unless the statements of the witnesses, Dorothy Horst, James Henry Evans and Leonard Patterson, are produced within thirty days to me *in camera*, in accordance with this opinion, an order will be entered remanding the case to the Special Inquiry Officer for purposes of a supplemental hearing at which both parties to this suit will have an opportunity to offer additional evidence consistent with this opinion and directing such officer to make findings of fact and conclusions of law on the basis of (1) the testimony of Thomas Zygmont, who gave no statement to the Government, (2) the testimony of such other witnesses at the 1954 hearings whose statements are produced to him at or before the day of the supplemental hearing, and (3) such evidence as is received at the supplemental hearing.

In the event that the statements are presented to me and contain unprivileged material having impeachment value, the record will be remanded to the Special Inquiry Officer with such material so that it may be delivered by such Officer to counsel for plaintiff for use in cross-examining the witness or witnesses concerned.

### Order

It is ordered, adjudged and decreed that the order of the Special Inquiry Officer dated 8/20/54, providing that the plaintiff be deported from the United States, and the order of the Board of Immigration Appeals dated 12/21/54, that the appeal from the order of 8/20/54 be dismissed, are unlawful and are set aside for the reasons stated in the opinion filed in this matter on June 22, 1956, and under the authority of 5 U.S.C.A. § 1009 (e) (B) (2); and, further, it is ordered that final judgment be entered for plaintiff on her claim that these orders are unlawful, since there is no just reason for delay in entering final judgment on this claim, as to these orders, in the complaint.[1] The Special Inquiry Officer may reconsider, without unreasonable delay,[2] the deportation of plaintiff on the basis of (a) the testimony of Thomas Zygmont, (b) the testimony of any other witnesses at the 1954 hearings whose statements are produced to him *in camera*[3] after following the procedure outlined in the opinion of 6/22/56, and (c) such other evidence, if any, as he may receive.[4] The certified copy of the deportation proceedings (marked A 5,-718,442) may be delivered by the Clerk of this court to the Special Inquiry Officer, Loyd H. Matson, Esq., or to his authorized representative, on his receipt therefor.

statements and the possible privilege involved were both questions of law, there would be no need to refer the matter back to the Special Inquiry Officer if there was no material in the statements to be turned over to counsel for plaintiff. This possibility indicated that examination of the documents by me might be a time-saving device.

1. Cf. F.R.Civ.P. Rule 54(b), 28 U.S.C. and statement of Assistant United States Attorney at page 9 of the transcript of the conference of April 20, 1956, indicating that he wishes to take an appeal from this order.

2. Cf. 5 U.S.C.A. § 1009(c) (A).

3. The use of sealed envelopes is suggested so that any statements not submitted to counsel for plaintiff will be available to the reviewing court.

4. The opinion in Livingstone v. Folsom, 3 Cir., 234 F.2d 75, indicates that the administrative hearing officer should decide whether or not additional proof is to be received by him.