**YEE SI, also known as Yee Suey,
Appellant,**

v.

**John P. BOYD, District Director of
Immigration and Naturalization,
Appellee.**

**No. 15314.**

United States Court of Appeals
Ninth Circuit.

April 10, 1957.

---

204

J. P. Sanderson, Seattle, Wash., and Joseph S. Hertogs, San Francisco, Cal., for appellant.

Charles P. Moriarty, U. S. Atty., Richard F. Broz, Murray B. Guterson, Asst. U. S. Attys., Seattle, Wash., for appellee.

Before POPE, LEMMON, and CHAMBERS, Circuit Judges.

LEMMON, Circuit Judge.

The appellant, a Chinese alien, is attempting to parlay his status of "temporary visitor for business" into that of "a member of the exempt class, either as a visitor or as a merchant, with the privileges of remaining as long as desired".

The immigration record shows that the appellant was to remain in the United States until January 28, 1948. Nearly a decade has elapsed since that date—and the "temporary visitor", like the storied "Man Who Came to Dinner", is still an unwelcome guest who insists that he has the right to stay as long as he pleases.

We do not look with favor upon this deportable alien's attempt to play ducks and drakes with the laws and the courts of the United States.

1. *Statement of Facts*

According to the immigration record, the appellant is a native of China and is of the Chinese race. He was a merchant in the Philippine Islands for about twenty years, dealing in herbs. He came to the United States to investigate the herb and tea business, arriving at San Francisco on July 3, 1947. He was admitted under Section 3(2) of the Immigration Act of 1924,* and the special regulations of 1941, relating to Chinese.

---

* Immigration and Nationality Act 1952, 8 U.S.C.A. § 1101(a) (15) (B).

After a hearing under an immigration warrant of arrest dated January 4, 1949, the appellant on January 24, 1952, was ordered deported on the ground of his having remained in the United States for a longer time than permitted "under the provisions of the Immigration Act of 1924, 8 U.S.C.A. § 201 [et seq.], 1942 edition ** ". The deportation order was affirmed by the Board of Immigration Appeals.

Shortly prior to December 3, 1954, the appellant applied to the appellee for adjustment of the former's status under § 6 of the Refugee Relief Act of 1953, 50 U.S.C.A.Appendix, § 1971d, which was denied.

On June 24, 1955, the appellant was called into the Immigration Station at Seattle, Washington, for deportation to China on July 7, 1955.

On July 6, 1955, the appellant filed a complaint in the court below, alleging that he was qualified and entitled to remain in the United States under Article II of a treaty between the United States and China concerning immigration, signed November 17, 1880, 22 Stat. 826, *infra,* hereinafter "the Treaty". The complaint also alleged that the appellant "was not given a fair hearing on his application under the Refugee Relief Act", supra.

On June 22, 1956, the District Court sustained the administrative order of deportation on the ground that the Treaty "did not operate to permit the [appellant] to remain in the United States for a longer period than set forth in the terms of his admission under the provisions of the Immigration Act of 1924, and that by reason of the same [the appellant] is subject to deportation under" that Act.

The appellant concedes that the above holding of the District Court "is a final decision on this point rendering the Appellant subject to deportation by the Immigration Service."

The Court below also held that the hearing accorded to the appellant under the Refugee Relief Act was unfair, and directed that the case be returned to the Immigration Service for a proper hearing. Such a hearing was conducted and a decision was rendered denying relief. The appellant concedes that from that decision "no appeal has [been] or will be taken".

From the judgment of June 22, 1956, and from an order denying the appellant's motion for a new trial, the present appeal has been filed.

2. *The Appellant Did Not Have "the Privilege of Remaining in the United States According to His Own Desire".*

The appellant contends that at the time of his admission on July 3, 1947, "he was qualified to enter this country as a member of the exempt class, either as a visitor or a merchant, with the privileges of remaining as long as desired, in accordance with Art. II of the Treaty," supra.

Article II reads as follows:

"Chinese subjects, whether proceeding to the United States as teachers, students, merchants or from curiosity, together with their body and household servants, and Chinese laborers who are now in the United States shall be allowed to go and come of their own free will and accord, and shall be accorded all the rights, privileges, immunities, and exemptions which are accorded to the citizens and subjects of the most favored nation."

This Court has specifically held that the Treaty is not self-executing. In Weedin v. Wong Tat Hing, 9 Cir., 1925, 6 F.2d 201, 202, Judge Rudkin said:

"The treaty between the United States and China (22 Stat. 826) consists of four brief articles *and is not self executing.* Article IV provides that, whenever the government of the United States shall adopt legislative measures in accordance therewith, such measures will be communicated to the government of

** Immigration and Nationality Act 1952, 8 U.S.C.A. § 1101 et seq.

China, and the acts of 1882 and 1884 were passed for the express purpose of executing the stipulations of that treaty. *If these acts have been abrogated, there is now no law to execute the stipulations of the treaty* because the three lines of clause 6 can hardly be considered as such a law." [Emphasis supplied.]

"Clause 6" referred to above, applied to "an alien entitled to enter the United States solely to carry on trade under and in pursuance of the provisions of a present existing treaty of commerce and navigation." As we have seen, however, the appellant was admitted as a "temporary visitor for business" under Section 3(2) of the Act of 1924, 8 U.S.C.A. § 203(2), which at that time read as follows:

"When used in this chapter the term 'immigrant' means any alien departing from any place outside the United States destined for the United States, except—

" * * * (2) an alien visiting the United States temporarily as a tourist or temporarily for business or pleasure, * * *."

Adverting again to the treaty itself, we find that it was indeed "executed" or implemented by two statutes—the Act of May 6, 1882, 22 Stat. 58, c. 126, and the Act of July 5, 1884, 23 Stat. 115, c. 220. Both of these statutes, however, were repealed by an act passed on December 17, 1943, 57 Stat. 600, c. 344, P.L. 199, or nearly four years before the appellant was admitted as a "temporary visitor for business". In other words, when the appellant arrived in the United States, the treaty was once again an unexecuted pronouncement, which could be modified by a subsequent act of Congress.

In Hing Lowe v. United States, 9 Cir., 1956, 230 F.2d 664, 665–666, this Court said:

"Chinese merchants prior to the effective date of the Act of 1924 [supra], under the terms of this Treaty, are in the United States for permanent residence. [Cases cited.]

"The Immigration Act of 1924, § 15, 8 U.S.C.A. § 215, however, modified the status of Chinese who came as treaty merchants after the Act of 1924, from that of entry for permanent residence to that of temporary residence. [Case cited.] Section 15 of the Act provides that a treaty merchant entering the United States was subject to regulations as to time of stay and·as to the giving of bond: ' * * * to insure that, at the expiration of such time or upon failure to maintain the status under which admitted, he will depart from the United States'.

* * * * * *

"*There is no doubt that a treaty may be modified by a subsequent act of Congress.* [Many cases cited.]"

While in the above case we were referring to Subsection 3(6) of the act, the decision is equally applicable to aliens who, like the appellant herein, have entered as "temporary visitors for business" under Subsection 3(2), supra.

In a word, if the unexecuted treaty provides for unrestricted entry and departure for Chinese citizens, and the Act of 1924 authorizes admission for limited periods only, the unexecuted treaty has been superseded to that extent.

It should not require an extended citation of authorities to demonstrate that the appellant, who entered the United States for a limited time and then exceeded his stay, has no right to remain. We need refer to but one or two decisions of this Court.

In Ex parte Wong Gar Wah, 9 Cir., 1927, 18 F.2d 250, 251, certiorari denied, 1927, 275 U.S. 529, 48 S.Ct. 21, 72 L.Ed. 409, the Chinese "traveler" was admitted for one year, which had long since expired. Of such a situation, we said:

"From the foregoing statement it seems quite apparent that the appellant is in the country without right. As a merchant, the certificate is made the sole evidence of his right to enter or remain, and he has no such

certificate. On the other hand, such temporary rights as he acquired by the traveler certificate have long since expired by lapse of time *and he is subject to deportation under the express provisions of section 14 of the Immigration Act of 1924.*

*"On the argument there was some discussion of treaty rights, but when a treaty comes in direct conflict with a later act of Congress, the latter will prevail.* [Case cited.]" [Emphasis supplied.]

In a recent case, United States v. Kwan Shun Yue, 9 Cir., 1952, 194 F.2d 225, 227, Judge Stephens said:

"The authorities are in agreement that treaty merchants entering subsequent to the Naturalization and Immigration Act of 1924 are limited in their privileges while here by the terms of that Act. They also show that the courts, in subsequent decisions, do not regard the Weedin case supra, as holding that the treaties between China and the United States preclude Congressional action limiting the privileges of a treaty merchant who enters subsequent to such enactments. They also clearly show that Congressional enactments supersede treaty provisions inconsistent with them. [Many cases cited.]"

3. *The Appellant Is Not Entitled to Complain That His "Admission Documents Were Not Presented".*

The appellant asserts that "The Appellee failed to present any of the documents the Appellant presented at the time he applied for admission for the consideration of the Court".

For several reasons, the appellant is not in a position to complain of the appellee's alleged failure in this respect.

In the first place, the appellant's objection was not timely. It was only in his supporting affidavit for a new trial that the appellant raised for the first time an alleged procedural defect in the administrative proceedings. At that late date he complained that "at the time of the administrative hearing upon his deportation [the appellant] was not shown his visa or original entry document". In support of his motion for a new trial, the appellant quoted a sentence from 8 U.S.C.A. § 1361, 1953 edition, which, in pertinent part, is essentially a restatement of 8 U.S.C.A. § 221, 1942 edition, as follows:

"In any deportation proceeding under Part 5 of this subchapter against any person, the burden of proof shall be upon such person to show the time, place, and manner of his entry into the United States, but in presenting such proof he shall be entitled to the production of his visa or other entry document, if any, and of any other documents and records, not considered by the Attorney General to be confidential, pertaining to such entry in the custody of the Service."

The timeliness of raising objections to administrative proceedings was stressed by the Supreme Court in United States v. L. A. Tucker Truck Lines, 1952, 344 U.S. 33, 37, 73 S.Ct. 67, 69, 97 L.Ed. 54:

"Simple fairness to those who are engaged in the tasks of administration, and to litigants, requires as a general rule that courts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." [1]

The proper time to have raised such an objection would have been during the deportation proceedings, where the de-

---

1. See also Application of Orlando, D.C. N.Y.1954, 131 F.Supp. 485, 489, affirmed United States ex rel. Orlando v. District Director of Immigration & Naturaliza-tion, 2 Cir., 1955, 222 F.2d 537, certiorari denied, 1955, 350 U.S. 862, 76 S.Ct. 103, 100 L.Ed. 764.

fect, if any, could have been cured. In 8 C.F.R. § 242.53(3) it is stated:

"The special inquiry officer assigned to conduct the hearing under this part shall have authority to:

\*     \*     \*     \*     \*     \*

"(3) Conduct the hearing, present and receive evidence, and rule upon all objections to the introduction of evidence or motions made during the course of the hearing; \* \* \*."

In the second place, the claim of the appellee's alleged failure to produce the appellant's entry documents is not supported by the record. The transcript discloses that "Apparently the only record of [the appellant's] entry into the United States was [his] Certificate of Admission of Alien, \* \* \* which was introduced into evidence at the deportation hearing," and is a part of the hearing record received at the trial of this cause. The transcript also reveals that, at the deportation hearing, the appellant himself presented a Chinese passport issued by the Consulate General of China in the Philippine Islands, at Manila on March 22, 1947, and visaed by the American Consulate General on April 28, 1947.

Finally, the appellant has not shown that any prejudice has resulted to him from this alleged procedural defect. In their briefs, the parties agree that the appellant is a native citizen of China of the Chinese race, and that he received permission to enter the United States at San Francisco as "a temporary visitor for business", to remain until January 28, 1948.

■ In the exercise of a sound discretion, therefore, the court below was justified in denying the motion for a new trial. Murphy v. United States District Court, etc., 9 Cir., 1944, 145 F.2d 1018, 1020, petition for a writ of certiorari dismissed per stipulation of counsel, 1945, 325 U.S. 891, 65 S.Ct. 1090, 89 L.Ed. 2003.

The appellant relies heavily upon the case of Petrowicz v. Holland, D.C.Pa. 1956, 142 F.Supp. 369, 370, 371. Analysis of *Petrowicz*, however, discloses that it is sharply distinguishable from the case at bar. There the plaintiff contended that she "was denied procedural due process of law by the refusal of the Examining Officer to submit to the Special Inquiry Officer for examination (and to counsel for plaintiff if there was a basis therefor) written statements given by the witnesses to government agents many months prior to the time of the hearings." The District Judge held that the "reviewing court must determine whether these statements disclose inconsistencies with present testimony of such a nature that plaintiff's counsel needs them in order to elicit the truth through cross-examination." No such situation is presented here.

The entire solution to this specific problem has been sententiously summarized in the recent case of Ramirez-Rangel v. Butterfield, 6 Cir., 1956, 234 F.2d 828, 830, apparently overlooked by counsel:

"*Procedural irregularities on the part of a governmental official, not material to the rights of an alien, do not invalidate the proceedings.* [Many cases cited.]" [Emphasis supplied.]

4. *Conclusion*

Accordingly, we hold that the appellant did not have the "privilege" of remaining in this country "according to his own desire", and that he is not entitled to complain that his admission documents were not presented.

The judgment of the District Court, sustaining the administrative order of deportation on the ground that the Treaty did not operate to permit the appellant to remain in the United States any longer, is therefore

Affirmed.