07-0981-cr(L)
United States v. Aref

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

--------

August Term, 2007

(Argued: March 24, 2008        Decided: July 2, 2008)

Docket Nos. 07-0981-cr(L), 07-1101-cr(CON), 07-1125-cr(CON)

------------------------------------------------------------X

UNITED STATES OF AMERICA,

Appellee,

- v. -

YASSIN MUHIDDIN AREF, MOHAMMED MOSHARREF HOSSAIN,

Defendants-Appellants.

NEW YORK CIVIL LIBERTIES UNION,

Proposed-Intervenor-Appellant.

------------------------------------------------------------X

Before:   JACOBS, Chief Judge, McLAUGHLIN, Circuit Judge, and
          SAND, District Judge.[1]

The defendants were convicted after a jury trial in the Northern District of New York (McAvoy, J.). The district court denied a motion of the New York Civil Liberties Union (the "NYCLU") to intervene in the case for the purpose of asserting a First Amendment right to discovery of certain documents sealed by court order. The defendants and the NYCLU now appeal.

---

[1] The Honorable Leonard B. Sand, United States District Court for the Southern District of New York, sitting by designation.

In an accompanying summary order, we reject most of the numerous challenges to the district court's rulings.  In this opinion, we hold that: (1) pursuant to section 4 of the Classified Information Procedures Act, 18 U.S.C. app. 3 § 4, a criminal defendant is entitled to discovery of relevant classified evidence that is helpful to his defense, a decision within the district court's discretion that may be made without the defendant's or his lawyer's participation; (2) we review denials of motions to intervene in criminal cases for abuse of discretion and find no such abuse here; and (3) district courts ordinarily should refrain from entirely (as opposed to selectively) sealing court orders and documents filed by the parties, but the district court did not err in doing so here.

AFFIRMED.

WILLIAM C. PERICAK, Assistant United States Attorney (Elizabeth C. Coombe, Brenda K. Sannes, Assistant United States Attorneys, of counsel), for Glenn T. Suddaby, United States Attorney for the Northern District of New York, Albany, NY.

TERENCE L. KINDLON (Kathy Manley, on the brief), Kindlon and Shanks, P.C., Albany, NY, for Defendant-Appellant Yassin Muhiddin Aref.

KEVIN A. LUIBRAND, Albany, NY, for Defendant-Appellant Mohammed Mosharref Hossain.

COREY STOUGHTON (Arthur Eisenberg, Christopher Dunn, on the brief),

New York Civil Liberties Union, New York, NY, for Proposed-Intervenor-Appellant.

Melissa Goodman, American Civil Liberties Union, and Corey Stoughton, New York Civil Liberties Union (Jameel Jaffer, American Civil Liberties Union; Arthur Eisenberg, Christopher Dunn, New York Civil Liberties Union, on the brief), for Amici Curiae American Civil Liberties Union and the New York Civil Liberties Union.

Peter Karanjia, Davis Wright Tremaine LLP (Christopher Robinson, David Wright Tremaine LLP, on the brief; David E. McGraw, The New York Times Company, of counsel), New York, NY, for Amici Curiae Advance Publications, Inc., The Associated Press, Daily News L.P., Gannett Co., Inc., The Hearst Corporation, NBC Universal, Inc., The New York Newspaper Publishers Association, The New York Times Company, Newsweek, Inc., North Jersey Media Group, The Reporters Committee for Freedom of the Press, Reuters America LLC, U.S. News and World Report, L.P., and The Washington Post, in support of Proposed-Intervenor-Appellant.

McLAUGHLIN, Circuit Judge:

Both defendants were convicted on charges arising out of a sting operation. The jury found that they conspired to conceal the source of what a cooperator represented to be proceeds from the sale of a surface-to-air missile. According to the cooperator, the missile was to be used by terrorists against a target in New York City. Before trial, the Government sought,

pursuant to the Classified Information Procedures Act ("CIPA"), 18 U.S.C. app. 3, two protective orders restricting discovery of certain classified information that, arguably, would have been otherwise discoverable. The district court granted the motions in part and denied the rest.

Based on an article in The New York Times (suggesting the defendants might have been subject to warrantless surveillance), Aref also moved to discover evidence resulting from any warrantless surveillance and to suppress any illegally obtained evidence or to dismiss the indictment. Both the Government's responses to the motion and the district court's order denying the motion were sealed because they contained classified information. The district court also denied motions by the New York Civil Liberties Union (the "NYCLU") to intervene and to get public access to those sealed documents.

The defendants appeal their convictions. The NYCLU appeals the denial of its motions to intervene and to get public access to the sealed documents. Because most of the appellants' challenges are governed by settled law, we address them in an accompanying summary order. We now resolve two issues of first impression: (1) the standard for determining what relevant classified information a criminal defendant is entitled to receive during discovery, and (2) the propriety of and the standard of review for denials of motions to intervene in

4

criminal cases.  We also hold that the district court did not err in sealing certain documents containing classified information, but we urge district courts to avoid sealing documents in their entirety unless necessary to serve a compelling governmental interest such as national security.

**BACKGROUND**

In a thirty-count indictment, both defendants were charged with conspiracy and attempt to commit money laundering and to provide material support to a designated terrorist organization. Aref was also charged with making false statements to federal officers.

The Government alleged that the defendants agreed to work with a cooperator in a scheme to conceal the source of $50,000. The cooperator told the defendants that the money came from the sale of a surface-to-air missile to a designated terrorist group called Jaish-e-Mohammed.  The missile was to be fired at a target in New York City.  A jury found Hossain guilty on all twenty-seven counts against him.  Aref was convicted on ten counts and acquitted on the others.  We address the defendants' challenges to the evidence against them in the accompanying summary order, and we recount only those facts relevant to the district court's handling of classified information.

During pretrial discovery, the Government sought protective orders pursuant to CIPA section 4, 18 U.S.C. app. 3 § 4, and

5

Federal Rule of Criminal Procedure 16(d)(1).  The orders would permit it to withhold classified information that might otherwise have been discoverable.  The district court held a series of ex parte, in camera conferences with the Government relating to the classified information.  The court also held an ex parte, in camera conference with defense counsel to assist the court in deciding what information would be helpful to the defense.

On January 20, 2006, Aref moved to: (1) suppress all evidence against him as the fruit of illegal electronic surveillance, (2) dismiss the indictment, and (3) direct the Government to admit or deny illegal electronic surveillance against him and to provide all documentation of intercepted communications.  Aref based this motion on an article in The New York Times, stating that "different officials agree that the [National Security Agency's] domestic operations played a role in the arrest" of Aref and Hossain.

On March 10, 2006, the Government filed an ex parte Opposition to Aref's motion (the "March 10, 2006 Opposition"), which the Court reviewed in camera.  That same day, the district court denied the motion in an order sealed from the public and the defendants (the "March 10, 2006 Order"), in which it made certain findings under seal.  It also issued a brief public order stating that it had denied the motion.

6

A week later, the district court issued two sealed orders granting in part and denying in part the Government's motions for protective orders. Later that month, the defendants asked for the district court's three sealed orders-the March 10, 2006 Order and the two orders resolving the Government's motions for protective orders. The district court denied that request, and Aref sought a writ of mandamus from this Court ordering: (1) the district court to vacate the sealed orders and to provide Aref with unredacted versions of the Government's filings, (2) the Government to disclose any warrantless surveillance of Aref's communications, and (3) the district court to suppress all evidence against him as derived from illegal warrantless surveillance and to dismiss the indictment. See Aref v. United States, 452 F.3d 202, 205 (2d Cir. 2006) (per curiam). The NYCLU moved to intervene to gain access to all sealed orders of the district court. We dismissed in part and denied in part Aref's petition and denied the NYCLU's intervention motion. See id. at 207.

On March 28, 2006, the district court issued a Decision and Order finding that both the Government's March 10 Opposition and the court's March 10, 2006 Order should be sealed because "the Government's interest in protecting the national security and preventing the dissemination of classified information outweighs the defendants' and/or the public's right of access to these

7

materials."  The district court reasoned that the March 10, 2006 Opposition and Order "were so limited in scope and so interrelated with classified information, [that] the filing of redacted materials . . . that did not divulge classified information would be impossible."

On July 6, 2006, the NYCLU moved to intervene to secure public access to as much of the March 10, 2006 Opposition and Order "as [could] be made public without compromising legitimately classified national security information."  The NYCLU also moved for public access to those documents.

Despite its earlier sealing decision, the district court, in response to the NYCLU's motion, instructed the Government to file publicly as much of its March 10, 2006 Opposition as it could without jeopardizing national security.  The Government publicly filed a redacted version of that document disclosing only a few unclassified paragraphs describing Aref's motion; and it provided the name and position of the official whose declaration was submitted to support the March 10, 2006 Opposition.

On February 22, 2007, the district court denied the NYCLU's motions to intervene and for public access, reaffirming its view that "there could be no public access" to the March 10, 2006 Opposition and Order "without compromising classified national security information."  Because "the issue raised in the NYCLU's

application was, in essence, decided before the [motion to intervene] was made and was based upon the standard advocated for by the NYCLU," the district court denied the NYCLU's motion to intervene.

The defendants and the NYCLU now appeal.

**DISCUSSION**

The defendants argue that the district court improperly denied them access to classified information during discovery. The NYCLU maintains that the district court erred in denying its motions to intervene and for public access.  We reject these arguments.

**I.  CIPA**

CIPA establishes procedures for handling classified information in criminal cases.[2]  The statute was meant to "protect[] and restrict[] the discovery of classified information in a way that does not impair the defendant's right to a fair trial."  United States v. O'Hara, 301 F.3d 563, 568 (7th Cir. 2002).

CIPA section 4 sets out procedures for "[d]iscovery of classified information by defendants":

---

[2] CIPA defines "classified information" as "information or material that has been determined by the United States Government pursuant to an Executive order, statute, or regulation, to require protection against unauthorized disclosure for reasons of national security."  18 U.S.C. app. 3 § 1(a).

> The [district] court, upon a sufficient showing, may authorize the United States to delete specified items of classified information from documents to be made available to the defendant through discovery under the Federal Rules of Criminal Procedure, to substitute a summary of the information for such classified documents, or to substitute a statement admitting relevant facts that the classified information would tend to prove. The court may permit the United States to make a request for such authorization in the form of a written statement to be inspected by the court alone.

18 U.S.C. app. 3 § 4.

This provision clarifies district courts' power under Federal Rule of Criminal Procedure 16(d)(1) to issue protective orders denying or restricting discovery for good cause. S. Rep. No. 96-823, at 6 (1980), as reprinted in 1980 U.S.C.C.A.N. 4294, 4299-4300. The Advisory Committee notes to Rule 16 make clear that "good cause" includes "the protection of information vital to the national security." Fed. R. Crim. P. 16 advisory committee's note to 1966 amendment.

It is important to understand that CIPA section 4 presupposes a governmental privilege against disclosing classified information. It does not itself create a privilege. United States v. Mejia, 448 F.3d 436, 455 & n.15 (D.C. Cir. 2006); see also H.R. Rep. No. 96-831, pt. 1, at 27 (1980) (noting that CIPA "is not intended to affect the discovery rights of a defendant"). Although Rule 16(d)(1) authorizes district courts to restrict discovery of evidence in the interest of national security, it leaves the relevant privilege undefined.

10

The most likely source for the protection of classified information lies in the common-law privilege against disclosure of state secrets. See Zuckerbraun v. Gen. Dynamics Corp., 935 F.2d 544, 546 (2d Cir. 1991). That venerable evidentiary privilege "allows the government to withhold information from discovery when disclosure would be inimical to national security." Id. It would appear that classified information at issue in CIPA cases fits comfortably within the state-secrets privilege. Compare id. with Classified National Security Information, Exec. Order No. 13,292, § 1.2, 68 Fed. Reg. 15315, 15315-16 (Mar. 25, 2003) (recognizing three levels of classified national security information, all of which require the classifying officer to determine that disclosure reasonably could be expected to damage national security).

We are not unaware that the House of Representatives Select Committee on Intelligence stated categorically in its report on CIPA that "the common law state secrets privilege is not applicable in the criminal arena." H.R. Rep. 96-831, pt. 1, at 15 n.12. That statement simply sweeps too broadly.

The Committee relied on three cases for this remarkable proposition: Reynolds v. United States, 345 U.S. 1 (1953), United States v. Coplon, 185 F.2d 629 (2d Cir. 1950), and United States v. Andolschek, 142 F.2d 503 (2d Cir. 1944). See H.R. Rep.

96-831, pt.1, at 15 n.12. A close reading of these cases does not support the Committee's conclusion.

In Reynolds, the Supreme Court held that a court in a civil case may deny evidence to plaintiffs if "there is a reasonable danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged." 345 U.S. at 10. In contrast, the Court explained that in criminal cases such as Andolschek, the Government was not permitted to "undertake prosecution and then invoke its governmental privileges to deprive the accused of anything which might be material to his defense." Id. at 12 & n.27. Similarly, we acknowledged in Coplon that the Government possesses a privilege against disclosing "state secrets," but held that the privilege could not prevent the defendant from receiving evidence to which he has a constitutional right. See 185 F.2d at 638. These cases, therefore, do not hold that the Government cannot claim the state-secrets privilege in criminal cases. Instead, they recognize the privilege, but conclude that it must give way under some circumstances to a criminal defendant's right to present a meaningful defense.

Accordingly, we hold that the applicable privilege here is the state-secrets privilege. See United States v. Klimavicius-Viloria, 144 F.3d 1249, 1261 (9th Cir. 1998) (holding that state-secrets privilege applies in CIPA cases). That said, Reynolds,

12

Andolschek, and Coplon make clear that the privilege can be overcome when the evidence at issue is material to the defense. See Reynolds, 345 U.S. at 12 & n.27. This standard is consistent with Roviaro v. United States, 353 U.S. 53 (1957), where the Supreme Court held in a criminal case that the Government's privilege to withhold the identity of a confidential informant "must give way" when the information "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause." Id. at 60-61. Indeed, we have interpreted "relevant and helpful" under Roviaro to mean "material to the defense." United States v. Saa, 859 F.2d 1067, 1073 (2d Cir. 1988). We have also noted that the government-informant privilege at issue in Roviaro and the state-secrets privilege are part of "the same doctrine." Coplon, 185 F.2d at 638.

We therefore adopt the Roviaro standard for determining when the Government's privilege must give way in a CIPA case. Other circuits agree. See Klimavicius-Viloria, 144 F.3d at 1261; United States v. Varca, 896 F.2d 900, 905 (5th Cir. 1990); United States v. Yunis, 867 F.2d 617, 623 (D.C. Cir. 1989); United States v. Smith, 780 F.2d 1102, 1107-10 (4th Cir. 1985) (en banc); United States v. Pringle, 751 F.2d 419, 427-28 (1st Cir. 1984).

13

Applying this standard, the district court must first decide whether the classified information the Government possesses is discoverable. If it is, the district court must then determine whether the state-secrets privilege applies because: (1) there is "a reasonable danger that compulsion of the evidence will expose . . . matters which, in the interest of national security, should not be divulged," and (2) the privilege is "lodged by the head of the department which has control over the matter, after actual personal consideration by that officer." Reynolds, 345 U.S. at 8, 10 (footnote omitted).

If the evidence is discoverable but the information is privileged, the court must next decide whether the information is helpful or material to the defense, i.e., useful "to counter the government's case or to bolster a defense." United States v. Stevens, 985 F.2d 1175, 1180 (2d Cir. 1993) (interpreting materiality standard under Federal Rule of Criminal Procedure 16(a)(1)). To be helpful or material to the defense, evidence need not rise to the level that would trigger the Government's obligation under Brady v. Maryland, 373 U.S. 83 (1963), to disclose exculpatory information. See id. at 87. "[I]nformation can be helpful without being 'favorable' in the Brady sense." Mejia, 448 F.3d at 457.

The district court's decision to issue a protective order under CIPA section 4 and Federal Rule of Criminal Procedure

14

16(d)(1) is reviewed for abuse of discretion. See United States v. Delia, 944 F.2d 1010, 1018 (2d Cir. 1991). Whether evidence is "helpful" or "material to the defense" is also within the district court's discretion. See DiBlasio v. Keane, 932 F.2d 1038, 1042 (2d Cir. 1991).

We find no abuse of discretion here. For purposes of this opinion, we assume without deciding that the classified information the Government presented to the district court was discoverable. We have carefully reviewed the classified information and the Government's sealed submissions and agree with the district court that the Government has established a reasonable danger that disclosure would jeopardize national security. See Reynolds, 345 U.S. at 10.

The Government failed, however, to invoke the privilege through the "head of the department which has control over the matter, after actual personal consideration by that officer." Id. at 8. This is not necessarily fatal. We have previously excused the Government's failure to comply with this formality where involvement of the department head would have been "of little or no benefit" because disclosure of classified information was prohibited by law. See Clift v. United States, 597 F.2d 826, 828-29 (2d Cir. 1979) (Friendly, J.) (internal quotation marks omitted). We similarly excuse the failure to involve the department head here. It would "be of little or no benefit" for us to remand for the purpose of having the department head agree

15

that disclosure of the classified information would pose a risk to national security here. Based on our holding today, however, we trust that this issue will not arise in future CIPA cases.

Finally, we agree that the district court did not deny the defendants any helpful evidence. Indeed, we commend the district court for its thorough scrutiny of the classified information.

We also reject Aref's contention that the district court improperly held ex parte hearings with the Government when evaluating the classified material. Both CIPA section 4 and Rule 16(d)(1) authorize ex parte submissions. See 18 U.S.C. app. 3 § 4; Fed. R. Crim. P. 16(d)(1). "In a case involving classified documents, . . . ex parte, in camera hearings in which government counsel participates to the exclusion of defense counsel are part of the process that the district court may use in order to decide the relevancy of the information." Klimavicius-Viloria, 144 F.3d at 1261. When the "government is seeking to withhold classified information from the defendant, an adversary hearing with defense knowledge would defeat the very purpose of the discovery rules." H.R. Rep. 96-831, pt. 1, at 27 n.22.

## II. Motion to Intervene

This Court has not yet established the standard by which we review a district court's denial of a motion to intervene in a criminal case. Indeed, we have implied, but not squarely held, that such a motion is appropriate to assert the public's First Amendment right of access to criminal proceedings. We now hold

16

that: (1) such a motion is proper, and (2) the applicable standard of review is abuse of discretion.

The Federal Rules of Criminal Procedure make no reference to a motion to intervene in a criminal case. United States v. Kollintzas, 501 F.3d 796, 800 (7th Cir. 2007). However, such motions are common in this Circuit to assert the public's First Amendment right of access to criminal proceedings. See, e.g., ABC, Inc. v. Stewart, 360 F.3d 90, 97 (2d Cir. 2004); United States v. Suarez, 880 F.2d 626, 628 (2d Cir. 1989); In re N.Y. Times Co., 828 F.2d 110, 113 (2d Cir. 1987); In re Herald Co., 734 F.2d 93, 96 (2d Cir. 1984). Federal courts have authority to "formulate procedural rules not specifically required by the Constitution or the Congress" to "implement a remedy for violation of recognized rights." United States v. Hasting, 461 U.S. 499, 505 (1983). Because "vindication of [the] right [of public access] requires some meaningful opportunity for protest by persons other than the initial litigants," In re Herald Co., 734 F.2d at 102, we now invoke this authority to hold that a motion to intervene to assert the public's First Amendment right of access to criminal proceedings is proper. Cf. In re Associated Press, 162 F.3d 503, 507 (7th Cir. 1998) (approving motion to intervene as an "appropriate procedural mechanism" to assert right of access).

17

In civil cases, this Court reviews denials of motions to intervene for abuse of discretion. See DSI Assocs. LLC v. United States, 496 F.3d 175, 182-83 (2d Cir. 2007). We see no reason to apply a different standard of review here. The district court denied the NYCLU's motion to intervene after fully considering the issue that the NYCLU raised, engaging in the same legal analysis that the NYCLU urged, and ultimately rejecting the argument on the merits. Under the circumstances, there was no abuse of discretion.

**III. Public Access to Sealed Documents**

The NYCLU and amici argue that the district court erred by sealing in its entirety the March 10, 2006 Order and sealing nearly all of the March 10, 2006 Opposition. We disagree.

"[I]t is well established that the public and the press have a qualified First Amendment right to attend judicial proceedings and to access certain judicial documents." Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 120 (2d Cir. 2006) (internal quotation marks omitted). The parties appear to agree that a First Amendment right of access attached to the district court's March 10, 2006 Order, but disagree as to whether the March 10, 2006 Opposition was the sort of judicial document to which the public has a right of access. We need not settle this dispute. Even assuming a right to the documents, the district court did not err in denying public access to them.

18

Documents to which the public has a qualified right of access may be sealed only if "specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." Press-Enter. Co. v. Super. Ct., 478 U.S. 1, 13-14 (1986) (internal quotation marks omitted). The district court found that sealing the March 10, 2006 Opposition and Order met this standard because the Executive classified the documents for national-security purposes. The NYLCU and amici argue that the district court's findings were insufficient because the court: (1) erroneously ruled that it lacked the power to review the Government's invocation of the security classifications; (2) failed to make specific findings on the record to support the conclusion that "higher values" justified sealing; and (3) improperly deferred to the Government's view of what could and could not be disclosed to the public.

First, we do not decide whether the district court erred in ruling that it lacked power to review security classifications because any such error was harmless. See Fed. R. Crim. P. 52(a). We have reviewed the sealed record and conclude that the Government established the classification levels employed (e.g., "Confidential," "Secret," and "Top Secret") were properly invoked pursuant to Executive Order.

19

Second, the NYCLU contends that the district court's public findings were perfunctory recitations of the applicable legal standard, and that the district court thus failed to support sealing the documents with specific, on-the-record findings. See In re N.Y. Times Co., 828 F.2d at 116 ("Broad and general findings by the trial court . . . are not sufficient to justify closure."). However, we have held that while the findings must be made on the record for our review, "such findings may be entered under seal, if appropriate." Id. The district court made sufficiently specific findings under seal that justified denying public access to the documents. Moreover, based on our own in camera review of the Government's submission to the district court, we conclude that the Government supported the need to keep the Opposition and Order sealed through a declaration or declarations from persons whose position and responsibility support an inference of personal knowledge; that the district court was made aware of particular facts and circumstances germane to the issues in this case; and that the Government made a sufficient showing that disclosure of the information sought would impair identified national interests in substantial ways. Therefore, the district court's ruling as to higher values was supported by specific findings based on record evidence.

20

Third, while it is the responsibility of the district court to ensure that sealing documents to which the public has a First Amendment right is no broader than necessary, see Press-Enter. Co., 478 U.S. at 13-14, our independent review of the sealed documents satisfies us that closure here was narrowly tailored to protect national security. Thus, any error the district court might have committed in deferring to the Government as to whether more of the March 10, 2006 Opposition could be made public was harmless.

Although we affirm the district court in this case, we reinforce the requirement that district courts avoid sealing judicial documents in their entirety unless necessary. Transparency is pivotal to public perception of the judiciary's legitimacy and independence. "The political branches of government claim legitimacy by election, judges by reason. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat and requires rigorous justification." Hicklin Eng'g, L.C. v. Bartell, 439 F.3d 346, 348 (7th Cir. 2006). Because the Constitution grants the judiciary "neither force nor will, but merely judgment," The Federalist No. 78 (Alexander Hamilton), courts must impede scrutiny of the exercise of that judgment only in the rarest of circumstances. This is especially so when a judicial decision accedes to the requests of a coordinate branch,

21

lest ignorance of the basis for the decision cause the public to doubt that "complete independence of the courts of justice [which] is peculiarly essential in a limited Constitution." Id.

We recognize, however, that transparency must at times yield to more compelling interests. "It is obvious and unarguable that no governmental interest is more compelling than the security of the Nation." Haig v. Agee, 453 U.S. 280, 307 (1981) (internal quotation marks omitted). Given the legitimate national-security concerns at play here and the nature of the underlying documents at issue, we believe the district court acted appropriately in sealing the March 10, 2006 Opposition and Order.

**CONCLUSION**

For the foregoing reasons, and for those stated in the accompanying summary order, we: (1) AFFIRM Aref's and Hossain's convictions, and (2) AFFIRM denial of the NYCLU's motions to intervene and for public access.

22