07-0797-cv
Doe v. Central Intelligence Agency

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

August Term, 2008

(Argued: February 3, 2009        Decided:  August 5, 2009)

Docket No. 07-0797-cv

--------------------------------------

JANE DOE, JANE ROE (minor), SUE DOE (minor), JAMES ROE (minor),

Plaintiffs-Appellants,

- v. -

CENTRAL INTELLIGENCE AGENCY, LEON E. PANETTA,[*] [AGENCY NAME REDACTED], UNITED STATES OF AMERICA,

Defendants-Appellees.

--------------------------------------

Before:    SACK and PARKER, Circuit Judges, and COTE, District Judge.[**]

Appeal from a judgment of the United States District Court for the Southern District of New York (Laura Taylor Swain, Judge) dismissing an action by the wife and children of a covert-status former CIA employee following the court's exclusion from evidence of classified information covered by the state-secrets privilege.  The plaintiffs argue on appeal (1) that the

---

[*]  Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Leon E. Panetta, who became Director of the Central Intelligence Agency on February 13, 2009, has been automatically substituted for former Director Porter J. Goss as a defendant-appellee on this appeal.

[**]  The Honorable Denise Cote, of the United States District Court for the Southern District of New York, sitting by designation.

government unconstitutionally interfered with their ability to oppose the government's invocation of the privilege when it denied their counsel access to secure media with which to read, transmit, or record the classified information at issue; and (2) that the government unconstitutionally failed to facilitate secure communications between the plaintiffs, who live in a classified location abroad, and their Washington-based counsel. We conclude (1) that inasmuch as the plaintiffs have no right to use information covered by an assertion of the state-secrets privilege to challenge that assertion, the government did not infringe the plaintiffs' constitutional rights by refusing to facilitate that intended use, and (2) that the government's restrictions did not infringe the plaintiffs' right to communicate with counsel.

Affirmed.

MARK S. ZAID, Mark S. Zaid, P.C., Washington, DC, for Plaintiffs-Appellants.

SARAH S. NORMAND, Assistant United States Attorney (Michael J. Garcia, United States Attorney for the Southern District of New York, Neil M. Corwin, Assistant United States Attorney, of counsel), New York, NY, for Defendants-Appellees.

SACK, Circuit Judge:

The wife and children of a covert-status former employee of the United States Central Intelligence Agency (the "CIA") brought this action in the United States District Court for the Southern District of New York on September 12, 2005, by filing a heavily redacted complaint naming four defendants: the CIA, the director of the CIA, the United States, and another federal agency the identity of which is redacted. The government responded by invoking the state-secrets privilege with respect to allegedly classified information related to the events giving rise to the plaintiffs' claims. It also moved to dismiss on the ground that litigation could proceed no further without disclosure of that information.

The district court (Laura Taylor Swain, Judge), having reviewed ex parte and in camera the un-redacted complaint and a classified declaration of the then-director of the CIA explaining why in his opinion the information in question qualified as a state secret, concluded that the government had properly invoked the privilege. The court thereupon granted the defendants' motion to dismiss.

The plaintiffs argue on appeal that the government violated their constitutional right of access to the courts by refusing to provide plaintiffs' counsel with secure facilities that would allow counsel to prepare an opposition to the government's assertion of the state-secrets privilege. Specifically, counsel was denied permission to view the un-

3

redacted, classified version of the complaint, which he himself had drafted, and to use secure facilities necessary to prepare and submit at least some of the potentially privileged and classified information to the district court. The plaintiffs also assert that inasmuch as Jane Doe is "unable to leave Foreign Country 'A,'" Compl. ¶ 33,[1] and counsel is based in Washington, D.C., the government is constitutionally obliged to provide secure facilities to permit Doe and counsel to communicate about these matters by telephone or email.

The plaintiffs have no right to use material that is alleged by the government to contain state secrets in order to participate in the district court's review of the bona fides of the government's allegation. Under controlling case law, that review was permitted -- perhaps required -- to be conducted ex parte and in camera. We therefore conclude that even if the government, as the plaintiffs allege, "prevented [them] from providing the necessary relevant information to their counsel . . . [and] precluded [their] counsel from drafting and filing a substantive Opposition brief" using that information, Pls.' Br. 6, those actions did not violate the plaintiffs' right of access to the courts. Moreover, insofar as the plaintiffs argue that the government's classification procedures

---

[1] According to the redacted complaint, "[b]ecause [name redacted, but presumably Jane Doe's husband] was unemployed, ailing, without medical insurance and in need of medical care, [redacted] he, together with all Plaintiffs, departed the United States for Foreign Country 'A' [redacted]" and "[a]ll Plaintiffs and [redacted] have since continued to reside in Foreign Country 'A.'" Compl. ¶ 29.

4

unconstitutionally abridged their right to communicate with counsel, we conclude that the plaintiffs have established no infringement of any such right.

The judgment of the district court is therefore affirmed.

**BACKGROUND**

The Plaintiffs' Public Allegations

By declaration, the plaintiffs' counsel states that he regularly represents employees and former employees of the CIA, and, in that capacity, has a "secrecy agreement" with the CIA. Decl. of Mark S. Zaid, June 18, 2006, ¶ 3. That agreement permits him limited access to some of the classified information known to his clients, but requires him to "submit all [contemplated] substantive . . . court filings to the CIA [before filing] so that it may conduct a classification review of the information therein." Id. Plaintiff Jane Doe also has signed various non-disclosure agreements. Pursuant to the plaintiffs' counsel's agreement, the complaint was redacted to delete references to information the CIA considered to be classified and was filed in redacted form in the public files of the district court. The redactions obscure much of the substance of the plaintiffs' allegations.

For purposes of this appeal, we rely on the district court's description of the redacted complaint in its publicly filed memorandum opinion and order granting the government's motions. Doe v. Cent. Intelligence Agency, No. 05 Civ. 7939

5

(LTS)(FM), 2007 WL 30099, at *1, 2007 U.S. Dist. LEXIS 201, at *2-*3 (S.D.N.Y. Jan. 4, 2007).

> Plaintiff Jane Doe is the wife of a former employee of the CIA who remains in covert status. The other three plaintiffs are the minor children of Jane Doe and her husband. The Complaint alleges that Jane Doe's husband "was summarily separated from his CIA employment," for a reason that is redacted as classified, and "terminated immediately for unspecified reasons." Plaintiffs departed for Foreign Country A, where they currently reside because the CIA has "refused to provide any assistance, medical or otherwise."

> The Complaint alleges that Plaintiffs are unable to leave Foreign Country A and that Plaintiff Jane Doe is a virtual prisoner in her home. She is "constantly fearful of eventual detection," for a reason that is redacted as classified. Although Plaintiff Jane Doe allegedly receives medical treatment and psychological counseling, she claims that the CIA has "demanded that she not disclose the basis for her apprehension to her medical professionals, while simultaneously refusing to provide her alternative treatment." Plaintiff Jane Doe alleges that she "suffers severe emotional distress producing physical symptoms from fear," and "lives in constant fear;" the reason for her alleged fear is redacted as classified.

Id. (citations omitted). The plaintiffs' redacted complaint asserts claims for damages and for injunctive and declaratory relief pursuant to the Administrative Procedures Act, 5 U.S.C. § 701 et seq., the Privacy Act, 5 U.S.C. § 552a et seq., specified federal constitutional provisions, and unspecified New

6

York state laws pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 et seq.[2]

### The Invocation of the Privilege and the Motion To Dismiss

After the redacted complaint was filed, the government requested, and the district court granted, an extension of several additional months' time within which to respond. The government eventually did so, submitting for the court's public files a declaration by Porter J. Goss, the Director of the CIA at the time, asserting "a claim of state secrets privilege over the classified information described in [a supplementary] classified declaration . . . submitted for the Court's ex parte, in camera review." Formal Claim of State Secrets Privilege by Porter J. Goss, Director Central Intelligence Agency, Mar. 16, 2006, ¶ 5. Director Goss declared that he was asserting the privilege "as the head of the CIA and after personal consideration of the matter." Id.

Goss's public declaration did not describe the classified information at issue because, he said, he had "determined that the bases for [the] assertion of the state secrets privilege cannot be filed on the public court record, or in any sealed filing accessible to the plaintiffs or their attorneys, without revealing the very information that [the government sought] to protect." Id. ¶ 7. According to Goss,

---

[2] The plaintiffs inform us that "certain relief for Jane Doe has been obtained through non-judicial means. Thus, not all of her legal claims remain pending." Pls.' Br. 3 n.2.

"neither plaintiffs nor their attorneys possess the need to know all of the classified information" covered by the privilege assertion, id. ¶ 8, notwithstanding the prior access by the plaintiffs and their counsel to a subset of that information pursuant to their "limited security approvals," id. ¶ 10. Goss based his conclusion on his determination that the information was not necessary for the plaintiffs and counsel "to 'perform or assist in a lawful and authorized governmental function' under Section 4.1(c) of Executive Order 12958," id. ¶ 11. The possible damage from "even an inadvertent slip" was "too great," in Goss's judgment, "to permit disclosure . . . even under protective provisions that the Court might be asked to enter." Id. ¶ 13.

According to Goss's public declaration, moreover, "the classified information . . . is so integral to the plaintiffs' claims that further litigation of this matter would necessarily result in the disclosure of such classified information" and "reasonably could be expected to cause serious damage to the national security." Id. ¶ 6. Goss also stated that unspecified additional classified and purportedly privileged information might be at risk of disclosure through discovery or trial. Id. ¶ 12. Based on the asserted need to keep the information secure, the government moved to dismiss the action on the ground that the plaintiffs could not establish a prima facie case without access to the information covered by the assertion of the state-secrets privilege, and the defendants could not defend the case without disclosing it.

8

## The Plaintiffs' Opposition

Following the filing of the government's motion and accompanying papers, the plaintiffs' counsel wrote to the Assistant United States Attorney assigned to the case. Counsel requested "reasonable access to an unredacted copy of the Complaint," which counsel had himself prepared and which was apparently in the files of the CIA; CIA-facilitated "secure communication," which would enable him to contact his client "in her present location" with secure telecommunications equipment to discuss potentially classified information; CIA-facilitated secure transmission between counsel and his clients of documents containing potentially classified information; and access for himself and Jane Doe's spouse to "a CIA computer at a designated location of [the CIA's] choice in order to draft the relevant substantive factual documentation," which he conceded would contain information that the CIA considered classified. Letter of Mark S. Zaid to AUSA Sarah Normand, Apr. 3, 2006, at 1-2. Counsel sought the information in order to support his clients' contemplated opposition to the state-secrets invocation and the defendants' motion to dismiss. All these requests were denied by the government.

Notwithstanding the government's continued refusal to provide such assistance, the plaintiffs opposed the government's motions, addressing "not whether the CIA's invocation of the state secrets privilege was appropriate [or whether] the plaintiffs' case must be dismissed in its entirety" as a result,

9

but whether "the First Amendment has been violated" by the government's denial of counsel's procedural requests. Pls.' Oppos'n to Defs.' Mot. To Dismiss, June 22, 2006, at 4-5. The opposition characterized that denial as "interference with the attorney-client relationship and deprivation of the plaintiffs' meaningful access to the courts." Id. at 5; see also id. at 2 ("[I]n light of the unconstitutional denial of the plaintiffs' First Amendment right to counsel and meaningful access to this Court, the CIA's Motion must be initially denied without a decision on the merits of the invocation of the privilege.").

The District Court's Ruling

Upon the district court's ex parte and in camera review of the government's classified submissions and the un-redacted complaint, the court approved the invocation of the state-secrets privilege and granted the motion to dismiss. See Doe, 2007 WL 30099, at *3-*4, 2007 U.S. Dist. LEXIS 201, at *9-*10. The court concluded that the assertion of the state-secrets privilege was "ripe" despite the absence of counter-submissions by the plaintiffs, that the privilege was properly invoked, and that the action should be dismissed because the very subject matter of the litigation is a state secret. See id. at *2-*3, 2007 U.S. Dist. LEXIS 201, at *6-*10.

The district court rejected the plaintiffs' assertion of a "right to submit classified material to the Court in connection with the Government's claim of the state secrets privilege," concluding that "[t]he disclosure and submission

10

right asserted by Plaintiffs would stand on its head the principle that courts are to be protective of material as to which [the] privilege is claimed." Id. at *2, 2007 U.S. Dist. LEXIS 201, at *5, *7. The court also rejected the plaintiffs' "complain[t] that the Government has not facilitated their attorney-client communications concerning classified matters," concluding that that was "not a claim that ha[d] been asserted in the Complaint in this action." Id. at *2, 2007 U.S. Dist. LEXIS 201, at *5-*6.

The plaintiffs appeal.

**DISCUSSION**

I.  Standard of Review

The parties dispute the standard by which we are to review the district court's rejection of the plaintiffs' opposition to the defendants' motion to dismiss. The government contends that we should review the procedure by which a state-secrets privilege invocation is considered for abuse of discretion; the plaintiffs argue that the proper standard of review is de novo. We decline to resolve this issue because we conclude that the court's judgment would survive review under either standard.

Were we all in agreement that the merits of the government's invocation of the state-secrets privilege were the question before us, we would likely review the district court's decision de novo on the ground that it was either a question of law or of the application of the law to facts that are not in

11

dispute. See, e.g., Hoblock v. Albany County Bd. of Elections, 422 F.3d 77 (2d Cir. 2005). The majority is of the view, however, that the question before us on this appeal is the propriety of the procedures the district court used to obtain the facts necessary to assess the merits. We might well, for that reason, give substantial deference to the district court's decision. See, e.g., In re Agent Orange Prod. Liability Litig., 517 F.3d 76, 102 (2d Cir. 2008) ("We review discovery rulings for abuse of discretion."); and cf. Northrop Corp. v. McDonnell Douglas Corp., 751 F.2d 395 (D.C. Cir. 1984) (applying abuse of discretion standard to review claims of both procedural and substantive error in state-secrets assessment). In the case before us, however, we need not decide which standard of review to apply inasmuch as we would affirm in any event.[1]

---

[1] Judge Parker believes that the appropriate standard of review is de novo because the court below simply read the Director's affidavit, invoked Reynolds, held that the state-secret doctrine applied, and dismissed the complaint pursuant to Rule 56. He believes that we are required to review such dismissals de novo. Pilgrim v. Luther, 2009 U.S. App. LEXIS 14588, at *7 (2d Cir. 2009). Since he thinks that this appeal concerns neither the procedures the district court used to determine the application of the privilege, nor the discovery to which litigants contesting the applicability of the privilege may be entitled, he does not believe that the issue of the deference due district courts in such situations is before us. He believes that what the Appellants do contend -- which is that they have the right to use the information that the government has asserted contains state secrets to oppose that assertion in the district court -- presents a question of law that must be reviewed de novo. See Robert Lewis Rosen Assocs. v. Webb, 473 F.3d 498, 503 (2d Cir. 2007). Finally, he believes that even if the subject of this appeal were a district court's choice of procedures (which is manifestly not a discovery issue), the standard of review would still be de novo. See Mohamed v. Jeppesen Dataplan, Inc., 563 F.3d 992, 1000 (9th Cir. 2009) ("We review de novo the interpretation and application of the state secrets

## II.  The State-Secrets Privilege

Whether the government properly invoked the state-secrets privilege and the district court properly dismissed this action are not questions before us for review because the plaintiffs did not contest those issues in the district court.[3] The question presented is, instead, whether the actions of the government in the course of invoking the privilege abridged the plaintiffs' constitutional rights.  In order to address this issue, we must first review the legal and procedural context in which those challenges are made.

In United States v. Reynolds, 345 U.S. 1 (1953), the Supreme Court established the procedure by which federal courts police the government's invocation of the common-law state-secrets privilege.[4]  Reynolds involved an FTCA action brought by the widows of civilians who had died in the crash of a B-29 bomber that was "testing secret electronic equipment."  Id. at 3. They sought discovery of an Air Force investigative report on the

---

privilege . . . ."  (emphasis added)).  But see Truock v. Lee, 66 Fed. Appx. 472, 475 (4th Cir. 2003) ("We review for abuse of discretion the district court's choice of procedures to determine whether the privilege applies.").

[3]  Accordingly, the content of the classified documents submitted by the government to the district court are not relevant to this appeal.  We have therefore not reviewed those documents ourselves.

[4]  "Although there is only a single state secrets evidentiary privilege, as a matter of analysis, courts have approached the privilege as both a rule of non-justiciability, akin to a political question, and as a privilege that may bar proof of a prima facie case."  Al-Haramain Islamic Found. v. Bush, 507 F.3d 1190, 1197 (9th Cir. 2007).

accident and statements provided by surviving members of the airplane's crew. Id. at 3-5.

The district court ordered the government to produce the documents for its review. Id. at 5. The government refused, initially not on state-secret grounds, but under regulations which it described as having been "'designed to insure the collection of all pertinent information regarding aircraft accidents in order that all possible measures will be developed for the prevention of accidents and the optimum promotion of flying safety.'" Reynolds v. United States, 192 F.2d 987, 990 (3d Cir. 1951) (Maris, J.) ("Reynolds Cir. Op."). Later, on rehearing, the government asserted that disclosure would "seriously hamper[] national security . . . and the development of highly technical and secret military equipment." Id.; Reynolds, 345 U.S. at 4. Based entirely on the government's refusal to produce the report, the district court entered judgment for the plaintiffs. Reynolds, 345 U.S. at 5.

The Third Circuit affirmed, concluding that "the absolute 'housekeeping' privilege" asserted by the government "against disclosing any statements or reports relating to this airplane accident regardless of their contents" did not obtain. Reynolds Cir. Op., 192 F.2d at 994. In the Court of Appeals' view, the FTCA's waiver of sovereign immunity meant that Congress had yielded that vague "national" interest to "the greater public interest involved in seeing that justice is done to persons injured by governmental operations." Id. The Court of Appeals

14

also warned that the existence of such a wide-ranging privilege might allow the government to keep information secret for the sole purpose of avoiding its own embarrassment or liability. See id. at 995.

The Court of Appeals distinguished the "'housekeeping' privilege" from the privilege which is properly invoked when "the documents sought to be produced contain state secrets of a military character." Id. at 996. It held that in evaluating the latter privilege, the district court judge had rightly "directed that the documents in question be produced for his personal examination so that he might determine whether all or any part of the documents contain" such confidential information. Id. Although the Court of Appeals thus rejected the contention that the claim of privilege was exempt from judicial review, it noted that "[s]uch examination must obviously be ex parte and in camera if the privilege is not to be lost in its assertion." Id. at 997. The court affirmed the judgment for the plaintiffs.

The Supreme Court reversed. Addressing only the privilege "against revealing military secrets," Reynolds, 345 U.S. at 6-7, the opinion of the Court set forth various "principles which control the application of the privilege," id. at 7. First, "[t]he privilege belongs to the Government and must be asserted by it; it can neither be claimed nor waived by a private party." Id. Second, it "is not to be lightly invoked." Id. "[T]he head of the department which has control over the matter" must assert it only "after [his or her] personal

15

consideration." Id. at 8. Third, "[t]he [district] court itself must determine whether the circumstances are appropriate for the claim of privilege," with the caveat that it must do so without "forcing a disclosure of the very thing the privilege is designed to protect." Id. By analogy to the balance struck on review of self-incrimination claims, the Court warned that "judicial control over the evidence in a case cannot be abdicated to the caprice of executive officers" but, at the same time, that a trial court may not "automatically require a complete disclosure to the judge before the claim of privilege will be accepted in any case." Id. at 9-10.

The Court concluded that the district court must be "satisf[ied]. . . from all the circumstances of the case[] that there is a reasonable danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged." Id. at 10. If the district court is satisfied that there is such a danger, it "should not jeopardize the security which the privilege is meant to protect by insisting upon an examination of the evidence, even by the judge alone, in chambers." Id. The Court thus strongly suggested that if the district court is not satisfied by the claim of privilege, it may examine the evidence in question, so long as the review is ex parte and in camera.

The Court explained:

> In each case, the showing of necessity [i.e., the importance of the documents to the plaintiff's case] which is made will determine how far the court should probe in

16

> satisfying itself that the occasion for invoking the privilege is appropriate. Where there is a strong showing of necessity, the claim of privilege should not be lightly accepted, but even the most compelling necessity cannot overcome the claim of privilege if the court is ultimately satisfied that military secrets are at stake.

Id. at 11 (footnote omitted).

The Reynolds Court concluded, on the facts before it, that once the formal claim of privilege had properly been asserted, "there was certainly a sufficient showing of privilege to cut off further demand for the document on the showing of necessity for its compulsion that had then been made." Id. The Court also decided that an offer the government had made to furnish several surviving members of the crashed airplane's crew as witnesses, id., was an "alternative" to disclosure that made the plaintiffs' need for the documents more "dubious" and presumably less necessary, id. at 11. The claim of privilege was thus correspondingly stronger. Id. at 10. No submission of the accident report for inspection by the trial court was necessary or appropriate. The Court remanded the case to the district court for reconsideration in light of the principles set forth in its opinion. See id. at 12.

Justices Black, Frankfurter, and Jackson "dissent[ed] substantially for the reasons set forth in the opinion of Judge Maris" for the Third Circuit. Id. The crucial distinction between the majority and dissenting views was thus that the majority refused to "go so far as to say that the [district] court may automatically require a complete disclosure to the

17

judge before the claim of privilege will be accepted in any case." Id. at 10. Judge Maris, and therefore presumably the dissenting Justices, would have held to the contrary that

> a claim of privilege against disclosing evidence relevant to the issues in a pending law suit involves a justiciable question, traditionally within the competence of the courts, which is to be determined in accordance with the appropriate rules of evidence, upon the submission of the documents in question to the [district] judge for his examination in camera.

Reynolds Cir. Op., 192 F.2d at 997 (footnotes omitted).

We applied Reynolds in Zuckerbraun v. General Dynamics Corp., 935 F.2d 544 (2d Cir. 1991),[6] where we affirmed a district court's dismissal of "a wrongful death action against the manufacturers of a missile defense system that allegedly failed to repel a missile attack upon a United States Navy frigate," id. at 545. We concluded that the district court rightly dismissed the suit because "the government properly invoked the state secrets privilege and thereby prevented [the plaintiff from] establish[ing] a prima facie case." Id.

We also summarized the requirements of the privilege: As a procedural matter, "[t]he privilege may be invoked only by

---

[6] The principles recognized in Reynolds may apply differently in the criminal context. See Reynolds, 345 U.S. at 12 (noting that certain issues implicated by criminal trials have "no application in a civil forum where the Government is not the moving party"); see also United States v. Aref, 533 F.3d 72, 79 (2d Cir. 2008), cert. denied, 129 S. Ct. 1582 (2009) ("Reynolds [and two previous Second Circuit decisions] make clear that the [state-secrets] privilege can be overcome when the evidence at issue is material to the [accused's] defense."). Here, of course, we treat only the effect of Reynolds and its progeny on civil proceedings.

the government and may be asserted even when the government is not a party to the case"; moreover, it "must be claimed by the head of the department with control over the matter in question after personal consideration by that officer." Id. at 546. The district court must also address the "validity" of the privilege, "satisfying itself that there is a reasonable danger that disclosure of the particular facts in litigation will jeopardize national security," while not compelling "disclosure of the very thing the privilege is designed to protect." Id. at 546-47 (internal quotation marks omitted). The court must then address the "effect of an invocation of the privilege," in light of the exclusion of the evidence, on the plaintiff's claim or defendant's defense. Id. at 547. "In some cases" that effect "may be so drastic as to require dismissal." Id.

As the District of Columbia Circuit has observed,

> the critical feature of the inquiry in evaluating the claim of privilege is not a balancing of ultimate interests at stake in the litigation . . . [but] the determination . . . whether the showing of the harm that might reasonably be seen to flow from disclosure is adequate in a given case to trigger the absolute right to withhold the information sought in that case.

Halkin v. Helms, 690 F.2d 977, 990 (D.C. Cir. 1982). Before such a determination can be made, however, the court must first decide how much of a "showing" is required by the government to permit the court to draw conclusions about whether and to what extent there exists a "reasonable danger" of inadvertent disclosure, private "necessity" for the evidence, and governmental "caprice"

19

in asserting the privilege. See Reynolds, 345 U.S. at 10-11. The trial court may not "automatically" require the government to produce the material for which secrecy is claimed, however, even for perusal of the judge in chambers. Id. at 10. Of course, at the other extreme, it may not undertake an insufficient investigation of the assertion to satisfy itself that actual military secrets are at stake and the danger of their disclosure is reasonably likely. See id.; see also Zuckerbraun, 935 F.2d at 547. "[A] complete abandonment of judicial control would lead to intolerable abuses." Reynolds, 345 U.S. at 8.

In some cases, the required scrutiny will be relatively modest, permitting the court to rely on nothing more than the complaint and the government's declaration. See, e.g., Zuckerbraun, 935 F.2d at 547 ("[W]e conclude that it is self-evident," in light of the government's declaration describing the subject matter of the information sought, "that disclosure of secret data and tactics concerning the weapons systems of the most technically advanced and heavily relied upon of our nation's warships may reasonably be viewed as inimical to national security."); Sterling v. Tenet, 416 F.3d 338, 347 (4th Cir. 2005) (accepting district court's reliance on government declaration in approving state-secrets invocation, in light of the "highly classified" nature of covert CIA agent's discrimination and retaliation claims), cert. denied, 346 U.S. 1093 (2006); Ellsberg v. Mitchell, 709 F.2d 51, 58 (D.C. Cir. 1983) ("[W]hen assessing claims of a state secrets privilege, a trial judge properly may

20

rely on affidavits and other secondary sources more often than he might when evaluating assertions of other evidentiary privileges."), cert. denied, 465 U.S. 1038 (1984).

Sometimes, however, review may require examination of the classified material itself. See El-Masri v. United States, 479 F.3d 296, 305 (4th Cir.) ("In some situations, a court may conduct an in camera examination of the actual information sought to be protected, in order to ascertain that the criteria set forth in Reynolds are fulfilled."), cert. denied, 128 S. Ct. 373 (2007); Ellsberg, 709 F.2d at 59 n.37 ("When a litigant must lose if the claim is upheld and the government's assertions are dubious in view of the nature of the information requested and the circumstances surrounding the case, careful in camera examination of the material is not only appropriate, but obligatory." (citations omitted)).

III.  The Plaintiffs' Contentions

The plaintiffs argue that the government unconstitutionally denied their counsel access to the secure media he needed to draft the opposition to the government's assertion of the state-secrets privilege.  In particular, counsel was refused permission to review the un-redacted classified version of the complaint which he himself had drafted, and to use the secure facilities necessary to prepare and submit at least some of the purportedly privileged and classified information to the district court.  In addition, counsel was denied access to secure means of communicating with Jane Doe in order to prepare

21

an opposition to the government's invocation, and Doe was unable to visit the United States for that purpose.  The plaintiffs' principal contention on appeal is that the denial of these requests violated their constitutional right of access to the courts.[7]

Following the government's invocation of the state-secrets privilege, the proceedings to determine the validity of that invocation were held by the district court ex parte and in camera.  The court was authorized to do so.  The Reynolds majority said as much:  "The court itself must determine whether the circumstances are appropriate for the claim of privilege, and yet do so without forcing a disclosure of the very thing the privilege is designed to protect."  Reynolds, 345 U.S. at 8 (citation omitted).  Indeed, the procedure followed here was one with which every Justice on the Reynolds Court apparently would have agreed.  Judge Maris's opinion for the Third Circuit, which

---

[7] The plaintiffs locate the source of that right in the First Amendment's Petition Clause, but the constitutional basis for the right appears to be "unsettled."  Christopher v. Harbury, 536 U.S. 403, 415 & n.12 (2002).  A person's "right of access" to the courts to litigate disputes may arise under, inter alia,

> the Sixth Amendment right of access [under Waller v. Georgia, 467 U.S. 39, 46 (1984), and its progeny], a First Amendment right to petition for redress, a right of access under the Privileges and Immunities Clause of Article IV, section 2, or the Due Process Clauses of the Fifth and Fourteenth Amendments.

Huminski v. Corsones, 396 F.3d 53, 83 & n.31 (2d Cir. 2005).  It should not be confused, although it sometimes appears to be, with the First Amendment right of members of the public of access to court proceedings and documents.  See id. at 80-85; Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 580 (1980).

the dissenting Justices substantially adopted, noted that "[the state-secrets] examination must obviously be ex parte and in camera if the privilege is not to be lost in its assertion." Reynolds Cir. Op., 192 F.2d at 997. Unarguably, then, the plaintiffs have no right of access to material that the government contends contains state secrets prior to the district court's adjudication of that contention. The plaintiffs do not create such a right by asserting that they seek access to enable them to argue that the alleged state secrets are not really state secrets.

The plaintiffs seek to avoid this bar by asserting that by denying their various requests, the CIA has unlawfully interfered with their ability to prosecute this lawsuit. They do not ask the CIA for access to classified information that is new to them. They seek instead to make use of information they already have but which the government nonetheless asserts requires protection against disclosure: inter alia, the identity and history of a covert CIA employee, Jane Doe's husband; the reasons for his termination by the CIA; the termination's effect on the plaintiffs; the identity of "Foreign Country 'A'"; the plaintiffs' circumstances there; and related information. The plaintiffs argue that the CIA has made it impossible for them to resist the government's invocation and motion to dismiss by denying their counsel permission to use secure media to view and create documents containing -- and to communicate with them about -- the purportedly privileged information that they already know.

The plaintiffs misconstrue the limits on their participation in Reynolds proceedings. They do not have the right to use the information that the government has asserted contains state secrets to oppose that assertion in the district court. Even if they already know some of it, permitting the plaintiffs, through counsel, to use the information to oppose the assertion of privilege may present a danger of "[i]nadvertent disclosure" -- through a leak, for example, or through a failure or mis-use of the secure media that plaintiffs' counsel seeks to use, or even through over-disclosure to the district court in camera -- all of which is precisely "the sort of risk that Reynolds attempts to avoid." Sterling, 416 F.3d at 348. The district court had no obligation to increase the risk of disclosure by permitting the plaintiffs to discuss, transmit, record, or file information asserted to be a state secret by the government.[8]

The Ninth Circuit faced a somewhat similar situation in Al-Haramain Islamic Foundation v. Bush, 507 F.3d 1190 (9th Cir. 2007). There, the plaintiffs also knew -- in that case as a result of accidental disclosure -- some of the information that the government asserted was a state secret. See id. at 1202-03. The district court and the court of appeals concluded that the

---

[8] There may be cases in which a district judge would act within his or her permissible discretion by permitting the plaintiff's counsel to take a greater role in the court's state-secrets deliberations where, in the circumstances, doing so would not endanger the secrets. We conclude no more than that the court acted properly in deciding otherwise here.

24

inadvertent disclosure to the plaintiffs did not make the state secret public information. See id. "Despite th[e] wrinkle" of accidental disclosure to the plaintiffs, the court of appeals said, "we read Reynolds as requiring an in camera [and ex parte] review of the [document containing the information in question] in these circumstances." Id. at 1203.

The plaintiffs here contend separately that the government's refusal to facilitate their secure attorney-client communications violated their "First Amendment interest in communicating with an attorney." Pls.' Br. 21. But the plaintiffs have effectively conceded that there was no infringement of any such right: They admit that counsel "could have traveled to Jane Doe" to confer with her about the case,[9] id. at 4 n.3, and do not dispute that Jane Doe's husband, the individual whose covert status as a former CIA employee is at the center of the government's invocation of the state-secrets privilege, could travel and meet with plaintiffs' counsel in the United States, see Defs.' Br. 38 (citing Complaint).

---

[9] Hypothetically, were the plaintiffs to plead and prove that their inability to confer with counsel was part of an effort on the part of the CIA to frustrate their ability to bring or pursue an action, they might be able establish a claim under Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971), or otherwise, see Christopher, 536 U.S. at 413 (recognizing a category of viable lawsuits in which "access to courts" claims are brought to the effect that "systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits"). That issue is not before us, however. The plaintiffs have alleged no facts that would support such a lawsuit here, nor have they sought such relief.

The parties' frustration with and objection to their exclusion from the Reynolds proceedings in the district court is understandable. The court, pursuant to Reynolds, dispensed with two fundamental protections for litigants, courts, and the public. First, the district court and the parties lost the benefit of an adversarial process, which may have informed and sharpened the judicial inquiry and which would have assured each litigant a fair chance to explain, complain, and otherwise be heard. See, e.g., Franks v. Delaware, 438 U.S. 154, 168 (1978) ("The usual reliance of our legal system on adversary proceedings itself should be an indication that an ex parte inquiry is likely to be less vigorous."). Second, they lost the value of open proceedings and judgments based on public evidence. See, e.g., Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 580 (1980) (concluding that criminal trials are presumptively public and noting that "'[w]ithout publicity, all other checks are insufficient: in comparison of publicity, all other checks are of small account. . . . [W]hatever other institutions might present themselves in the character of checks, would be found to operate rather as cloaks than checks; as cloaks in reality, as checks only in appearance.' 1 J. Bentham, Rationale of Judicial Evidence 524 (1827)[10]" (footnote in original, renumbered)).

---

[10] Bentham also emphasized that open proceedings enhanced the performance of all involved, protected the judge from imputations of dishonesty, and served to educate the public. Rationale of Judicial Evidence 522-525.

26

As we observed in United States v. Aref, 533 F.3d 72 (2d Cir. 2008):

> Transparency is pivotal to public perception of the judiciary's legitimacy and independence. The political branches of government claim legitimacy by election, judges by reason. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat and requires rigorous justification. Hicklin Eng'g, L.C. v. Bartell, 439 F.3d 346, 348 (7th Cir. 2006). Because the Constitution grants the judiciary "neither force nor will, but merely judgment," The Federalist No. 78 (Alexander Hamilton), courts must impede scrutiny of the exercise of that judgment only in the rarest of circumstances. This is especially so when a judicial decision accedes to the requests of a coordinate branch, lest ignorance of the basis for the decision cause the public to doubt that "complete independence of the courts of justice [which] is peculiarly essential in a limited Constitution." Id.

Id. at 83.

The proceedings at issue here were held ex parte and in camera for good and sufficient reason, however: to ensure that legitimate state secrets were not lost in the process. The plaintiffs' rights of access to the courts were not compromised by the district court's refusal to require that the CIA facilitate their use of information covered by an assertion of the state-secrets privilege to challenge that assertion.

Our affirmance of Judge Swain's decision is not affected by the Ninth Circuit's recent rejection of the government's assertion of the state-secrets privilege in Mohamed v. Jeppesen Dataplan, Inc., 563 F.3d 992 (9th Cir. 2009). In Mohamed, the plaintiffs opposed the invocation of the state-

secrets privilege on the ground that the information they were seeking to offer the court was based in whole or in part on public information.  Id. at 997-98 (reversing dismissal of plaintiffs' action which, "[c]iting publicly available evidence . . . claim[ed] they were each processed through the [CIA's] extraordinary rendition program" and also cited "publicly available evidence" that the aircraft company defendant "provided flight planning and logistical support services" to the program).  But see El-Masri, 479 F.3d at 308, 311 (affirming dismissal of the complaint on the ground that "the facts that are central to litigating [plaintiff's] action" were state secrets, despite plaintiff's "assertion that the facts essential to his Complaint have largely been made public").  The plaintiffs here do not contend that their claims rest on information that is already publicly available.

Similarly, we have no occasion to address whether and to what extent the government could validly refuse to grant the plaintiffs the access they sought to discuss, view, or record classified information not properly covered by an assertion of the state-secrets privilege.  See, e.g., Mohamed, 563 F.3d at 1003 (rejecting government's argument that "state secrets form the subject matter of a lawsuit, and therefore require dismissal, any time a complaint contains allegations, the truth or falsity of which has been classified as secret by a government official").  We therefore reach, and intimate our views on, neither issue.

**CONCLUSION**

For the foregoing reasons, the judgment of the district court is affirmed.